**KAPPLER v. REPUBLIC PICTURES CORPORATION.**

No. 338.

District Court, S. D. Iowa, Central Division.

Feb. 8, 1945.

Walter F. Maley and Ted E. Hartung, of Maley & Hartung, all of Des Moines, Iowa, for plaintiff.

E. D. Perry and Paul Ahlers of Stipp, Perry, Bannister, Carpenter & Ahlers, all of Des' Moines, Iowa, for defendant Republic Pictures.

DEWEY, District Judge.

This action came on for hearing in open court at Des Moines, Iowa, on its merits on the 19th day of January, 1945. Evidence was introduced and the case submitted on written arguments. The action is to recover for overtime pay as provided by the Fair Labor Standards Act of 1938, Title 29, Section 201 et seq., U.S.C.A.

Plaintiff entered the employ of the defendant corporation in February, 1941, being employed by Mr. Moran, branch manager of the Des Moines office, and continued in this employment until June, 1943.

Defendant is a corporation engaged in the moving picture business with its principal place of business in New York City. It maintains a branch distributing agency in Des Moines, Iowa, and it has owned, possessed, marketed and shipped moving picture merchandise to points in the State of Iowa and to points outside of the State of Iowa. There are about 10 people employed at Des Moines, including the plaintiff, the salesmen and the district manager. After the films are shipped to Des Moines from New York and New Jersey they are sold to exhibitors by the salesmen within and without the State of Iowa.

The duty and employment of the plaintiff was what is known as a booker. It was his duty to book the pictures on the dates that the pictures would fit into the booking situation in the local office and it was his duty to see that the films were kept in uniform order and see that they were booked in proper order so that the films reached the exhibitors in time for their theater use and that the films were returned on time or would be forwarded to other points as might be necessary, and to more or less establish a booking arrangement in the sequence in which the pictures are released and more or less assist in completing the contractual obligation of the exhibitor. He also had to see that the pictures were forwarded by the exhibitor to the next exhibitor or returned to Des Moines. He was not directly engaged in their transportation in the sense that he had personal physical contact with the goods but directed the transportation companies and other agencies in whose hands they might be to deliver them at a particular time to appointed places. This was done by telephone, telegraph and correspondence through the mails.

The question for determination is whether under this situation the plaintiff is engaged in interstate commerce or in the production of goods for interstate commerce to bring him within the provisions of the statute.

From the decisions on this question we know that the Act is not coextensive with the limits of the power of Congress over commerce; further, that there is no dependable touchstone to determine whether employees are "engaged in commerce;" the problem is one of drawing lines. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638.

The lines are to be drawn after "an analysis of the various types of transactions and the particular course of business * * *." Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 337, 87 L. Ed. 460.

It is the work of the particular employee and not the business of the employer which controls. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. And the burden of proof is on the employee to show that he personally is either engaged in commerce or his work is necessary for the production of goods for interstate commerce. Schwarz v. Witwer Grocer Co., 8 Cir., 141 F.2d 341; Rucker v. First Nat. Bank of Miami, Okl., 10 Cir., 138 F.2d 699. The evidence does not indicate that the plaintiff's duties were necessary to produce moving picture or films and the plaintiff does not therefore come within the rule that his work was necessary for the production of goods for commerce. Western Union Tel. Co. v. Lenroot, 65 S. Ct. 335.

The question for determination therefore is narrowed to whether the plain-

tiff has shown by a fair preponderance of the evidence that he was engaged in interstate commerce. And he must show that a substantial portion of his activities related to goods moving in the channels of interstate commerce. Walling v. Jacksonville Paper Co., 317 U.S. 564, 572, 63 S. Ct. 332, 87 L.Ed. 460.

"The test * * * to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538.

"And in that connection closeness depends upon the essentiality and indispensability of the particular work or services performed to the actual movement of commerce. * * * If a cessation of the services of the employee causes an interruption or interference with the free movement of commerce, it is ordinarily regarded as an essential and indispensable part thereof." New Mexico Public Service Co. v. Engel, 10 Cir., 145 F.2d 636, 638.

While, as stated above, there is no dependable touchstone to determine whether employees are engaged in commerce, the Supreme Court of the United States in the case of Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682, held that a rate clerk working for a transportation company was engaged in commerce within the meaning of the Act and I can see little difference between the duties of a rate clerk in that case and the duties of the plaintiff here as a booking agent who keeps track of the goods being transported in interstate commerce and directs their destination. See also Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656, where one of petitioners sold and collected toll tickets.

Defendant seriously contends that as the goods were shipped to Iowa and were sold from the Iowa office they had come to rest in Iowa and that the plaintiff has failed to prove that a substantial portion of his activities related to goods moving in the channels of interstate commerce. The evidence of the plaintiff was that from the Des Moines office the prints of the films were shipped generally to points in Iowa and other offices and accounts outside of the State. And there is no evidence as to the proportion of the films that were shipped from the Iowa office to points outside of the State.

The trouble with this contention is that it assumes that the films came to rest in Iowa. The defendant in this regard relies upon that class of cases where goods are purchased and shipped to a person in a state for resale and the shipment terminates before the resale is made. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. The defendant overlooks, however, the fact that the shipments from New York and New Jersey to Iowa were made by the corporation to its branch office and were not completed transactions to a third person. The branch office at Des Moines was a distributing agent for the defendant and the contracts of sale to exhibitors must have been sales by the corporation.

Under this situation the goods did not come to rest in Iowa but the interstate character of the transportation continued until the goods were in the hands of the exhibitors and, even then, they only stopped temporarily, as the goods were licensed and not sold, and the transportation continued until after all of the exhibitors had used them when they were returned to Des Moines and probably back to New York City. In any event, the goods did not come to rest from the time of the initial shipment from New York and New Jersey until after they were used by the exhibitors, so that all of the duties of the plaintiff insofar as they related to the prints of these films were in interstate commerce. Binderup v. Pathe Exchange, 263 U.S. 291, 309, 44 S. Ct. 96, 68 L.Ed. 308; DeLoach v. Crowley's Inc., 5 Cir., 128 F.2d 378, 379; Walling v. Jacksonville Paper Co., 317 U.S. 564, 568, 63 S.Ct. 332, 87 L.Ed. 460.

The defendant contends, also, that even if the plaintiff was engaged in interstate commerce that the defendant never consented to his working in excess of 40 hours a week but, on the contrary, plaintiff was advised that it was the policy of the company that he was to be employed during office hours aggregating 40 hours a week and that the company would not recognize any claims for overtime. Following out this policy of the company and by direction of the superintendent a directive was issued to all of the employees in the branch

office at Des Moines, which was initialed as being received and understood by such employees, including this plaintiff, which reads as follows:

"Sept. 22, 1941

"From F. R. Moran
"To All Employees.

"Effective this date we will use a daily time record, and each of you have the responsibility of setting down the time of your arrival at the office in the morning, when you leave for your lunch period, when you return, and again when you leave in the evening.

"The office hours, as you know, are from 8:30 a. m. to 4:45 p. m. with an hour for lunch on week days, and from 8:30 a. m. to 12:15 p. m. on Saturdays. It is also to be understood that there is to be no overtime unless the proper approval is secured from either Mr. Adair or myself.

"I can not stress the importance of this record being kept up to date at all times too strongly, therefore, to assure me that each of you thoroughly understand the above instructions, kindly initial this letter, which will indicate to me your full and complete understanding.

"F. R. Moran"

■■ The evidence establishes that Mr. Moran knew of the overtime being worked by plaintiff and made no objection thereto but in fact co-operated with the plaintiff in his overtime work. Under this situation I am satisfied that this claim of avoidance cannot prevail. There are many cases determining that the parties can not by contract limit the scope and effect of the congressional enactment and I think the statement in the recent case of Katharine F. Lenroot v. Interstate Bakeries Corporation, 8 Cir., 146 F.2d 325, 328, is sufficient on the point here raised. In that case it is said: "* * * the mandate of the statute is directed to the employer and 'he may not escape it by delegating it to others.' The 'duty rests on the employer to inquire into the conditions prevailing in his business. He does not rid himself of that duty because the extent of the business may preclude his personal supervision and compel reliance on subordinates. He must then stand or fall with those whom he selects to act for him. * * * the duty must be held personal, or we nullify the statute * * *.' 'The cases must be rare where prohibited work can be done within the plant, and knowledge or the consequences of knowledge avoided.' "

While the court in this case was discussing the provision of the Act having to do with child labor violations by subordinates, it appears to be equally pertinent to the provisions of the statute under discussion here. It will also be noted that in the directive set out above permission for overtime could be granted by Mr. Moran, who was the very person who knew of the overtime work being done by the plaintiff.

The final major defense is that the action is barred by the statute of limitations of the State of Iowa. That statute reads as follows: "Section 1. In all cases wherein a claim or cause of action has arisen or may arise pursuant to the provisions of any Federal statute wherein no period of limitation is prescribed, the holder of such claim or cause of action may commence action thereon within but not after a period of six months after March 1, 1943, if such claim or cause of action arose prior to March 1, 1943, or within but not later than six months after the accrual of such claim or cause of action if such claim or cause of action arose after March 1, 1943." Chap. 267, 50th G.A.Iowa, 1943.

■ It will be noted that this is a very peculiar statute as it is not a general statute of limitations but is directed only to the provisions of federal statutes. It has been established by decisions of the Supreme Court of the United States ever since the time of John Marshall that acts of the Congress of the United States are supreme within the sphere of the delegated authority to the United States government. The Legislature of the State of Iowa had no more right therefore to tack on this provision to the federal statutes than a city would have by ordinance to add a provision to acts of the state Legislature. It is not a question of constitutionality, but it is an attempt on the part of the Legislature of the State of Iowa to enter a field of legislation exclusively within the authority of the Congress of the United States. It is true that where there is no limitation of time in which a federal statute can be enforced the federal judiciary turns to the general statute of limitations of a state to determine the question of laches. But this rule and these decisions have nothing to do with the determination of the question of whether the Legislature of the State of Iowa had a right or authority to add to federal statutes provisions with reference to limitations on the time

when actions might be maintained thereon. Congress only has such right, power and authority and the State cannot regulate and determine the time when actions may be brought under federal statutes. Campbell v. City of Haverhill, 155 U.S. 610, 615, 15 S.Ct. 217, 39 L.Ed. 280; Momand v. 20th Century Fox Film Corporation, D. C., 37 F.Supp. 649, 653.

Plaintiff kept a daily record of the time employed in his duties and I can find no reason to challenge his statement of the number of hours of work that he performed.

The question of what constitutes and how to determine "the regular rate at which he is employed," has its difficulties. The statute does not provide that an employee is to be paid time and a half for each hour he works over 40 hours a week but time and a half of "the regular rate at which he is employed." So if a person is employed not for any particular hours but at a regular rate of pay for his weekly or hourly work the "regular rate" would be the total number of hours he worked in each week or month. Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Walling v. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716. But if his "regular rate" is based upon an agreed 40 hours a week rate then he is entitled to straight time and a half for all overtime. United States v. Townsley, 65 S.Ct. 413.

We have to determine therefore what was the "regular rate" of the plaintiff in this case. I have read and reread the transcript and I am satisfied with the following conclusions:

At the time plaintiff was first employed there was nothing said about the number of hours that he was to work for his weekly wage of $35. However, on account of the extra hours that he was working he took the matter up with the manager as to what should be done about payment for overtime and the manager in turn took the question up with the home office in New York City. Mr. Moran, sometime in June or July, 1941, was then advised by the New York office "that they wanted overtime kept at a minimum and, if necessary, hire additional people to do the work." Mr. Moran, following out what he considered were the directions from the home office, then prepared and served upon each employee in the Des Moines office the written directive dated Sept. 22, 1941, which is set out in full above.

From the evidence, therefore, I conclude that from and after Sept. 22, 1941, the defendant determined and put in force a policy that the weekly wage of the employees was to be for a 40-hour week only. In figuring the amount of the plaintiff's overtime, therefore, his regular rate must be determined on the full amount of the hours that he worked prior to Sept. 22, 1941, and at a rate based on 40 hours a week after that time.

I therefore make the following findings of fact and conclusions of law:

## Findings of Fact.

1st. I find that the plaintiff was an employee of the defendant from February, 1941 to June, 1943.

2nd. That the original contract of employment did not specify and there was no agreement as to the number of hours which plaintiff was to work in any one week, but on Sept. 22, 1941, the defendant notified all its employees at Des Moines that from and after that date their employment was for a 40-hour week.

3d. That the defendant was during the time of such employment engaged in the moving picture business and owned, possessed, marketed and shipped moving picture films from New York and New Jersey to points in the State of Iowa and to points outside of the State of Iowa.

4th. That plaintiff's employment during this period, and substantially for all of his time, was as a booker of these films after they had been sold to exhibitors within the area of the Des Moines branch, and his activities were so closely related to the interstate transportation of these goods as to be a part thereof.

5th. That the intervener, Erma Jean Schultz, did not appear and introduced no evidence and her intervention should be dismissed for want of prosecution with prejudice.

## Conclusions of Law.

1. That the petition of intervention of Erma Jean Schultz should be and the same is hereby dismissed with prejudice for want of prosecution.

2. That plaintiff was during the time of his employment engaged in interstate com-

118

merce and that the principal part of his activities was in such employment.

3. That all of the goods and films shipped from New York and New Jersey into the State of Iowa continued in the stream of interstate commerce while they were in the State and during the time that plaintiff's activities had to do with and were a part of such shipments.

4. That the plaintiff, Francis Kappler, is entitled to overtime pay from February 1941 to Sept. 22, 1941, to be computed according to the method set out in Missel v. Overnight Motor Transp. Co., 4 Cir., 126 F.2d 98, at page 110; Overnight Motor Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Walling v. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L.Ed. 1716.

5. That the plaintiff, Francis Kappler, is entitled to overtime compensation at the rate of straight time and one-half for the hours which he worked over and above 40 hours a week from Sept. 22, 1941, to June 1943. See United States v. Townsley, 65 U.S. 413.

6. That plaintiff is also entitled to liquidated damages as provided by the statute. Sec. 216(b), 29 U.S.C.A.

7. That plaintiff is entitled to the relief demanded as determined above, with judgment against the defendant for costs and an attorney's fee in the sum of $300.

8. That the statute relied upon by the defendant of the State of Iowa as a statute of limitations is ineffective as being an attempt by the State Legislature to invoke powers belonging exclusively to the Congress of the United States.

9. That the policy of the defendant to employ the plaintiff for specific hours at a specific weekly wage with directions to its employees not to work overtime, even though known to the plaintiff, did not affect the right of the plaintiff to rely upon the Fair Labor Standards Act to recover for overtime.

10. The attorneys for plaintiff may prepare a judgment entry in conformity with the foregoing findings of fact and conclusions of law.

11. Defendant's motion made at the close of all the evidence to dismiss is overruled.

To each and every finding of fact and conclusion of law the defendant and plaintiff except.