W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

R. C. SPENCER, Defendant.

Civ. A. No. E-C-33-62.

United States District Court
N. D. Mississippi, E. D.
Oct. 3, 1963.

Beverley R. Worrell, Regional Atty., U. S. Department of Labor, Birmingham, Ala., for plaintiff.

Eugene B. Gifford, Jr., Booneville, Miss., for defendant.

CLAYTON, District Judge.

This is an action for an injunction brought by the Secretary of Labor, United States Department of Labor, pursuant to Section 17 of the Fair Labor Standards Act of 1938, as amended, (29 U.S.C. § 201 et seq.) hereinafter referred to as the Act. Plaintiff seeks to have defendant permanently enjoined and restrained from violating the minimum wage, overtime, record-keeping and shipping provisions of the Act.

In his Answer, defendant admitted the applicability of the Act to his employees and generally denied having violated the Act as alleged by plaintiff.

This action was tried before the Court, without a jury, at Aberdeen, Mississippi, on September 23, 1963. After due consideration of the pleadings, the evidence and the stipulations of the parties, and being otherwise sufficiently advised in the premises of the action, the Court now makes the following:

### FINDINGS OF FACT

1. Defendant R. C. Spencer resides at Booneville, Prentiss County, Mississippi, and at all times pertinent to this action was, and is, the owner and operator of a sawmill facility where he has been, and is, engaged in producing sized or dimensioned pieces of hardwood lumber. During the period herein involved, defendant's sawmill facility was located at Red Bay, Alabama and Booneville, Mississippi. The said facility is now located at Booneville, Mississippi.

2. During the period since February 1, 1960, defendant employed, and is now employing approximately nine (9) employees in and about his sawmill facility in sawing, handling, producing and otherwise working on sized or dimensioned hardwood lumber and other goods, substantial quantities of which were regularly sold, shipped, delivered, and transported to customers located outside the States of Alabama and Mississippi.

3. Although the scheduled workday for defendant's employees at his sawmill facility was generally from 7 a. m. to 12 noon and from 1 p. m. to 4 p. m., many of his employees during the period herein involved regularly and customarily commenced working at the said sawmill from 15 to 30 minutes before 7 a. m. and 1 p. m. During such intervals, these employees engaged in sharpening saws, cleaning, lubricating and otherwise maintaining machinery necessary to the production of lumber and in removing accumulations of wood scraps and particles.

4. No compensation whatsoever was paid by defendant to his employees who performed work at his sawmill before 7 a. m. and 1 p. m., albeit such work was performed for his benefit and with his knowledge and acquiescence.

5. Frequently during the period herein involved, productive operations at the defendant's sawmill were interrupted by machinery breakdowns caused by such things as a mill saw hitting a metal object or by the breaking of a belt propelling a mill saw, etc. Such interruptions were generally of short duration. Defendant followed a practice of compensating only those employees who remained active during such breakdown periods and of not compensating his employees who waited for the machinery to be repaired and for production to be resumed. Such employees were expected to and did remain at or near the sawmill facility so as to be ready to resume work as soon as the cause of the breakdown had been remedied.

6. During many workweeks of the period since February 1, 1960, defend-

ant's employees worked more than forty (40) hours and were not compensated by defendant for their hours worked in excess of forty (40) per week at rates of not less than one and one-half times the regular rate at which they were employed. Defendant's own time and payroll records reflect several such instances.

7. During the period herein involved, defendant failed to maintain adequate and accurate records of the hours worked and the wages paid to his employees.

8. Defendant regularly shipped and sold goods to customers located outside the States of Alabama and Mississippi; such goods having been produced by many of his employees who were not compensated at the statutory minimum wage and who did not receive time and one-half for their hours worked in excess of forty (40) per week.

9. Defendant admitted and displayed knowledge and understanding of his statutory responsibilities under the Act.

10. After the institution of this action, defendant failed to abandon certain of his employment and recordkeeping practices which were not in compliance with the prescriptions of this Act and he further failed after the commencement of this action to institute corrective procedures designed and required to insure his compliance with the Act in the future.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties hereto and of the subject matter involved in this action.

■■ 2. During the period herein involved defendant's employees have been regularly engaged in commerce and in the production of goods for commerce within the meaning of the Act.

■■ 3. Defendant throughout the period herein involved violated Sections 6, 7 and 15(a) (2) of the Act by failing to compensate his employees for their hours worked before 7 a. m. and 1 p. m. Such work, though perhaps performed

contrary to defendant's wishes, was nonetheless compensable under the Act because it was suffered and permitted by defendant. 29 U.S.C. § 203(g). See also Wirtz v. Leonard, 317 F.2d 768 at 769 (C.A. 5, 1963); Handler v. Thrasher, 10 Cir., 191 F.2d 120; Kappler v. Republic Pictures Corporation, D. C., 59 F.Supp. 112.

■■ 4. Defendant throughout the period herein involved further violated Sections 6, 7 and 15(a) (2) of the Act by failing to compensate his employees who remained inactive and waited at or near his sawmill facility during work stoppages caused by machinery breakdowns. Defendant's policy of not compensating such employees for this waiting time was contrary to the requirements of the Act. Under this Act, "[h]ours worked are not limited to the time spent in active labor but include time given by the employee to the employer * * *" Skidmore v. Swift & Co., 323 U.S. 134 at 138, 65 S.Ct. 161 at 163, 89 L.Ed. 124. Although these employees waited and did nothing, they were expected to and did remain at or near the sawmill in instant readiness to serve the defendant. Thus, during such periods they were employed to stand-by and wait, and they should have been compensated for such waiting time. See Armour & Co. v. Wantock, 323 U.S. 126 at 133, 65 S.Ct. 165 at 168, 89 L.Ed. 118; Missouri, K. & T. Ry. Co. of Texas v. United States, 231 U.S. 112 at 119, 34 S.Ct. 26 at 27, 58 L.Ed. 144.

■ 5. Additional violations of Sections 7 and 15(a) (2) of the Act resulted from defendant's practice of not paying overtime compensation required by the Act to his employees for their hours worked in excess of forty (40) per workweek.

■ 6. Defendant, by failing to maintain adequate and accurate records of the hours and wages paid to his employees, violated Sections 11(c) and 15 (a) (5) of the Act.

7. Defendant throughout the period herein involved violated the provisions of Section 15(a) (1) of the Act.

8. Plaintiff having proven extensive violations of the minimum wage, overtime, record-keeping and shipping provisions of the Act by defendant and the defendant having failed to explain to the satisfaction of the Court his reasons for not complying in the past and having failed to demonstrate or produce tangible evidence of any corrective action taken by him before or since the commencement of this action so as to assure his compliance with the Act in the future, it is the opinion and decision of this Court that there is an existing necessity here for the issuance of a permanent injunction.

Let judgment be entered accordingly.