30530.   RAYMOND *et al. v.* PARRISH *et al.*

DECIDED JUNE 9, 1944.

294

*Martin, Martin & Snow, M. L. Preston,* for plaintiffs in error.
*M. D. Dickerson, D. C. Sapp,* contra.

FELTON, J. 1. The fair labor standards act provides: "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—" 29 U. S. C. A. § 206. The act further provides: "Commerce means trade, commerce, transportation, transmission or communication among the several States or from any State to any place outside thereof." § 203(b). " 'Produced' means produced, manufactured, mined, handled or in any other manner worked on in any State; and for the purposes of this act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." § 203(j).

The defendants are not engaged in commerce, within the meaning of the act, in so far as their teaching or instructing activities are concerned. While teaching and instructing may involve communication such as could under certain circumstances be classed as commerce, the teaching and instructing done by the defendants as alleged was not among the several States or from any State to any place outside thereof. The communication involved did not cross

a State line as a necessary and essential part of the act to be done or the result to be obtained. As was stated by Judge Lovett in the case of Murphy v. Georgia Aero-Tech, 49 Fed. Supp. 982, "The art of instruction, however, where student and teacher meet face to face, generally is not looked upon as involving commercial intercourse." The fact that the cadets to be instructed by the defendants came from other States would not make the instructing of the cadets "commercial intercourse." Nor would the fact that the cadets were sent to other States after the defendants completed their part of the training of them. Besides, the defendants had nothing to do with either the bringing to them of cadets from other States or the sending of them to other States.

In the case of Federal Baseball Club v. National League, 259 U. S. 200 (42 Sup. Ct. 465, 66 L. ed. 898, 26 A. L. R. 357), Justice Holmes, author of the opinion, stated: "The business is giving exhibitions of baseball, which are purely State affairs. It is true that, in order to attain for these exhibitions the great popularity that they have achieved, competitions must be arranged between clubs from different cities and States. But the fact that, in order to give the exhibitions, the leagues must induce free persons to cross State lines, and must arrange and pay for their doing so, is not enough to change the character of the business. According to the distinction insisted upon in Hooper v. California, 155 U. S. 648, 655 [15 Sup. Ct. 207, 39 L. ed. 297], the transport is a mere incident . . the exhibition, although made for money, would not be called trade or commerce in the commonly accepted use of those words. As it is put by the defendants, personal effort, not related to production, is not a subject of commerce. That which in its consummation is not commerce does not become commerce among the States because the transportation that we have mentioned takes place. To repeat the illustrations given by the court below, a firm of lawyers sending out a member to argue a case, or the Chautauqua lecture bureau sending out lecturers, does not engage in such commerce because the lawyer or lecturer goes to another State." This line of reasoning applies to the instant case. Personal instruction is the kernel, transportation a mere incident, and one over which the defendants had no control, as the government alone had authority to say where cadets could come from before their instruction in Georgia was completed, and whence they should go, after it

was completed. Illustrations could be multiplied. For instance, schools, hospitals, camps, resorts, etc., cannot be said to be engaged in commerce merely because students, patients, attendants, guests, etc., cross State lines to get to them and away from them. It follows that the following duties on the part of plaintiff and the other guards did not show an engagement in commerce or in activities which were so closely related thereto as to become a part of it, or in the production of goods for commerce in so far as the cadet instruction was concerned: (1) Checking cadets in and out of school; (2) guarding the personal property of the cadets; (3) guarding the airplanes stationed at the school and used in training the cadets; (4) guarding other airplanes grounded for the day or night on trips to and from the school not alleged to have been engaged in commerce; (5) guarding food served the cadets, and the food-processing equipment used in preparing the food. The allegations of the petition are likewise insufficient to charge that the defendants or the plaintiffs were engaged in commerce or in the production of goods for commerce in the guarding of airplanes grounded for a day or night on trips to and from the school to and from other States. The mere fact that planes came from and went to other States is not sufficient, especially in view of the circumstances alleged in the petition. If these planes were operated by officers or enlisted men of the army, under army orders, they would not be engaged in commerce or the production of goods for commerce. Dupont v. Davis, 264 U. S. 456 (44 Sup. Ct. 364, 68 L. ed. 788). It was pointed out in the cases of Walling v. Jacksonville Paper Co., 317 U. S. 564 (63 Sup. Ct. 332, 87 L. ed. 460), Kirschbaum v. Walling, 316 U. S. 517 (62 Sup. Ct. 1116, 86 L. ed. 1638), Higgins v. Carr, 317 U. S. 572 (63 Sup. Ct. 337, 87 L. ed. 468), and McLeod v. Threlkeld, 319 U. S. 491 (63 Sup. Ct. 1248, 87 L. ed. 1538), that the act stopped short of covering transactions or business merely "affecting" commerce, and under the authority and reasoning of those cases, when the gasoline tank cars, food, and food-processing equipment came to rest at the defendants' school all phases of commerce connected with them ceased, under the facts alleged, and the guarding of such property was not commerce, or the production of goods for commerce, and was not so closely related to commerce as to be a part of it. The furnishing of gasoline to planes destined for points without the State is not alleged to be engagement in com-

298

merce otherwise than by pleader conclusions, so it is not necessary to decide what would be the effect of such transactions. See also, Johnson v. Masonic Building Co., 138 Fed. 2d, 817; Roseberg v. Semeria, 137 Fed. 2d, 742; Johnson v. Dallas Downtown Development Co., 132 Fed. 2d, 287. The ruling in International Textbook Co. r. Pigg, 217 U. S. 91 (30 Sup. Ct. 481, 54 L. ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103), is not applicable here. In that case the textbook company in pursuance of a contract with out-of-State scholars or students, furnished books, apparatus, and papers by mail, which things were useful or necessary to the student in respect of which by virtue of the contract he was entitled to information and direction. In that case the court said: "Intercourse of that kind, between parties in different States—particularly when it is in execution of a valid contract between them—is as much intercourse, in the constitutional sense, as intercourse by means of the telegraph."

The petition did not set forth a cause of action, and the court erred in overruling the general demurrers. The subsequent proceedings were nugatory, and it is not deemed necessary to pass on the other questions raised.

*Judgment reversed. Sutton, P. J. and Parker, J., concur.*