30934. TEXAS COMPANY *v.* PITMAN.

DECIDED OCTOBER 25, 1945.

132

*John M. Slaton, James J. Slaton,* for plaintiff in error.
*Noah J. Stone,* contra.

GARDNER, J. ■ We will now endeavor to apply the provisions

of the act to such allegations of fact in the petition as are made issues of law by the demurrers. We feel that we can state with assurance from these allegations that the employee did no act "in the production of goods for commerce," and had no "occupation necessary to the production of goods in interstate commerce" under the provisions of the act. If he had alleged that he was actually in the production of goods for commerce or that his occupation was necessary to the production of goods in interstate commerce, and such statements or conclusions had sufficient specifications of alleged facts to sustain them, then, under this provision of the statute, he would have brought himself within its scope. The production of goods for interstate commerce is one thing, and the movement of such goods in commerce is a different thing. The allegations of the petition set forth no act of the employee which shows that he was at the time engaged in the production of goods for commerce or did anything necessary to such production. The allegations confine his activities to the movement of the goods after they had been produced, and the movement of them after they had gotten into commerce as defined by the act, § 203 (b, j), supra. The words in subsection j immediately above, referring to, "handling and transporting," have reference only to goods in process of production, and not to handling and transporting the goods after the production is completed.

■ Let us then inquire whether or not the activities of the employee as shown by the allegations of his petition place him under the protective provisions of the act as being engaged in commerce—that is to say, did the activities of the employee engage him in the movement of the goods on the interstate journey as to the point where such goods became intrastate commerce in contradistinction from interstate commerce? The attorneys for the employer devote considerable attention to the fact that the petition nowhere alleges the portion of time in any one week which the employee devoted to interstate commerce. It is true that the petition does not allege any portion of the time of the employee's activities which were devoted to interstate commerce, or devoted to intrastate commerce with reference to the movement of the goods in question. If the activities of the employee were divisible as between interstate commerce and intrastate commerce, the contention of the attorney for the employer would be correct. But con-

struing the petition most strongly against the employee, he alleges that all of his activities were devoted to interstate commerce. Distinguished counsel for the employee very plainly stated this in his oral argument before this court as well as in his written argument and brief. Therefore, under this construction, we will proceed with the consideration on the ground that, since there is nothing either alleged or argued to the contrary, the allegations of the petition are based on the proposition that the entire activities of the employee were devoted to interstate commerce, and it is not necessary for us to consider or require as a response to the demurrer that more than 20 percent of the employee's time was devoted to interstate commerce. The petitioner is wholly within the protective provisions of the act, or wholly without the protective provisions of the act. Let us then inquire whether his activities were in interstate commerce or in intrastate commerce. It is not contended that he was not engaged in interstate commerce. The goods under consideration were shipped from one State to another and came to rest at the terminus of the interstate shipment. After coming to rest, they were no longer in commerce under the act, but became goods in intrastate commerce. The work of the employee was the construction, repairing, and maintaining of storage tanks in which the goods were stored for retail distribution to the consumer after they had come to rest. The mere fact that he did the same work in several States did not change the character of his activities. When the tank car in which the goods were moved came to a stop at the fartherest point of the interstate journey, and nothing more was to be done except transport the goods to the storage tanks of the employer, the goods ceased to be "in commerce" under the provisions of the act. The mere allegation that the employee would incidentally transfer some of the goods from the carrier's container to the storage tank of the employer would not change the character of his activities from intrastate to interstate commerce. This is true for the reason that before the employee handled the goods they had already come to rest, and under section 213 (a, 2) his activities were then in a service establishment. In *Raymond* v. *Parrish*, 71 *Ga. App.* 293, 297 (30 S. E. 2d, 669), this court said: "It was pointed out in the cases of Walling *v.* Jacksonville Paper Company, 317 U. S. 564 (63 Sup. Ct. 332, 87 L. ed. 460), Kirschbaum *v.* Walling, 316

U. S. 517 (62 Sup. Ct. 1116, 86 L. ed. 1638), Higgins v. Carr, 317 U. S. 572 (63 Sup. Ct. 337, 87 L. ed. 468), and McLeod v. Threlkeld, 319 U. S. 491 (63 Sup. Ct. 1248, 87 L. ed. 1538), that the act stopped short of covering transactions or business merely 'affecting' commerce, and under the authority and reasoning of those cases, when the gasoline tank cars, food, and food-processing equipment came to rest at the defendants' school, all phases of commerce connected with them ceased, under the facts alleged, and the guarding of such property was not commerce, or the production of goods for commerce, and was not so closely related to commerce as to be a part of it. The furnishing of gasoline to planes destined for points without the State is not alleged to be engagement in commerce otherwise than by pleader conclusions, so it is not necessary to decide what would be the effect of such transaction." See also 150 A. L. R. 878; Walling v. Bridgeport Tobacco Co., 57 Fed. Supp. 429. In the last-cited case the court held: "Tobacco wholesaler's employees, engaged in handling tobacco products within one State after interstate movement of the products had come to rest in railroad warehouse, or on wholesaler's platform, were not engaged in commerce within meaning of fair labor standards act. . . It is only after the products have thus come to rest that the defendant's employees have anything to do with them other than the incidental clerical service of ordering from and remitting to the manufacturer. This slight and inconsequential involvement in interstate commerce is, under the authorities cited above, in my opinion insufficient to bring the operations of any of the defendant's employees within . . the fair labor standards act."

Counsel for the employee cite Warren-Bradshaw Drilling Company v. Hall, 317 U. S. 88 (63 Sup. Ct. 125, 87 L. ed. 83), in support of his contentions that his activities bring him within the provisions of the act. The facts upon which that decision is based are that the employees—who were engaged in drilling oil wells to a depth short of the oil-sand strata, which wells were later "brought in by other workers," and the oil thus brought in, in either crude or refined products, moved in interstate commerce—were engaged in an occupation necessary to the production of oil for interstate commerce, and were therefore covered by the fair labor standards act now under consideration. It appears from the facts of that

case that the employees there were engaged to drill the oil wells to a certain depth and to proceed from there to drill other wells. An expert crew of drillers with different equipment would "bring in the wells." The employees of the initial drilling company drilled in thirty-two wells, and thirty-one of them produced oil, and the other gas. The evidence showed that some of the oil produced from the wells ultimately found its way into interstate commerce. The court held that the employees were engaged "in a process or occupation necessary to the production of oil for interstate commerce." We do not discern any benefit which the employee in the instant case can derive from that decision. No similarity at all appears as to the facts in the cases. By reference to the notes of decisions on this act, in 29 U. S. 439 et seq., as well as the supplement thereto, and also by reference to the Federal Reporter on the same subject, many additional decisions may be found to the effect that the activities of the employee in the instant case are not covered by the fair labor standards act.

The court erred in overruling the demurrers.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*