## McLEOD v. THRELKELD ET AL.

No. 787. Argued May 6, 7, 1943.—Decided June 7, 1943.

*Mr. Leon C. Levy,* with whom *Mr. Harry Dow* was on the brief, for petitioner.

*Mr. John P. Bullington* for respondents.

*Solicitor General Fahy* and *Messrs. Richard S. Salant* and *Irving J. Levy* and *Miss Bessie Margolin* filed a brief

on behalf of the Administrator of the Wage and Hour Division, United States Department of Labor, as *amicus curiae,* urging reversal.

MR. JUSTICE REED delivered the opinion of the Court.

This certiorari brings here for examination a judgment of the Circuit Court of Appeals for the Fifth Circuit, 131 F. 2d 880, which held that a cook, employed by respondents to prepare and serve meals to maintenance-of-way employees of the Texas & New Orleans Railroad Company, is not engaged in commerce under §§ 6 and 7 of the Fair Labor Standards Act and therefore not entitled to recover for an alleged violation of that act.[1]

The respondents are a partnership with a contract to furnish meals to maintenance-of-way employees of the railroad, an interstate carrier. The meals are served in a cook and dining car attached to a particular gang of workmen and running on the railroad's tracks. The car is set conveniently to the place of work of the boarders and in emergencies follows the gang to the scene of its activities. Employees pay the contractor for their meals by orders authorizing the railroad company to deduct the amount of their board from wages due and pay it over to the contractor. The petitioner worked as cook at various points in Texas along the line of the road during the period in question.

As the extent of the coverage by reason of the phrase "engaged in commerce" is important in the administration of the Fair Labor Standards Act, we granted certiorari.

---

[1] 52 Stat. 1062–63. "Sec. 6. (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

.        .        .        .        .

"Sec. 7. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce . . ."

In drafting legislation under the power granted by the Constitution to regulate interstate commerce and to make all laws necessary and proper to carry those regulations into effect, Congress is faced continually with the difficulty of defining accurately the precise scope of the proposed bill. In the Fair Labor Standards Act, Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority. The proposal to have the bill apply to employees "engaged in commerce in any industry affecting commerce" was rejected in favor of the language, now in the act, "each of his employees who is engaged in commerce or in the production of goods for commerce." [2] §§ 6 and 7. See the discussion and reference to legislative history in *Kirschbaum Co.* v. *Walling,* 316 U. S. 517, and *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564. The selection of the smaller group was deliberate and purposeful.

McLeod was not engaged in the production of goods for commerce. His duties as cook and caretaker for maintenance-of-way men on a railroad lie completely outside that clause. [3] Our question is whether he was "engaged in commerce." [4] We have held that this clause covered

---

[2] The distinction in the coverage arising from this choice of language was well known to Congress. Cf. National Labor Relations Act, 49 Stat. 449, 450. *Labor Board* v. *Jones & Laughlin,* 301 U. S. 1, 31 *et seq.;* Bituminous Coal Act of 1937, § 4-A, 50 Stat. 72, 83; Agricultural Adjustment Act, 50 Stat. 246; Public Utility Holding Company Act of 1935, 49 Stat. 803, § 1 (c).

[3] 52 Stat. 1061. "(i) 'Goods' means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."

[4] Cooks employed to feed workers engaged in the production of goods for commerce have been held to be similarly engaged. *Hanson* v. *Lagerstrom,* 133 F. 2d 120; *Consolidated Timber Co.* v. *Womack,* 132 F. 2d 101.

every employee in the "channels of interstate commerce," *Walling* v. *Jacksonville Paper Co.*, 317 U. S. 564, as distinguished from those who merely affected that commerce. So handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not.[5] Employees engaged in operating and maintaining privately owned toll roads and bridges over navigable waterways are "engaged in commerce." *Overstreet* v. *North Shore Corp.*, 318 U. S. 125. So are employees of contractors when the employees are engaged in repairing bridges of interstate railroads. *Pedersen* v. *J. F. Fitzgerald Construction Co.*, 318 U. S. 740, 742.

In the present instance, it is urged that the conception of "in commerce" be extended beyond the employees engaged in actual work upon the transportation facilities.[6] It is said that this Court decided an employee, engaged in similar work was "in commerce," under the Federal Employers' Liability Act[7] and that it is immaterial whether the employee is hired by the one engaged in the interstate business since it is the activities of the employee and not of the employer which are decisive.[8]

---

[5] *Walling* v. *Jacksonville Paper Co., supra; Higgins* v. *Carr Bros. Co.*, 317 U. S. 572.

[6] The contention that the work of the employee is covered by the exemption of § 13 (a) (2)—"any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce"— seems without significance. If the work is in interstate commerce, the exemption does not apply. Compare *Consolidated Timber Co.* v. *Womack*, 132 F. 2d 101, 106 *et seq.; Hanson* v. *Lagerstrom*, 133 F. 2d 120.

[7] *Philadelphia, B. & W. R. Co.* v. *Smith*, 250 U. S. 101. This case construed the Federal Employers' Liability Act of April 22, 1908, 35 Stat. 65, § 1; "Every common carrier by railroad while engaging in commerce . . . shall be liable in damages . . ."

[8] *Walling* v. *Jacksonville Paper Co.*, 317 U. S. 564; *Kirschbaum Co.* v. *Walling*, 316 U. S. 517, 524.

Judicial determination of the reach of the coverage of the Fair Labor Standards Act "in commerce" must deal with doubtful instances. There is no single concept of interstate commerce which can be applied to every federal statute regulating commerce. See *Kirschbaum Co.* v. *Walling, supra,* 520. However, the test of the Federal Employers' Liability Act that activities so closely related to interstate transportation as to be in practice and legal relation a part thereof are to be considered in that commerce, is applicable to employments "in commerce" under the Fair Labor Standards Act.[9]

The effect of the over-refinement of factual situations which hampered the application of the Federal Employers' Liability Act, prior to the recent amendment,[10] we hope, is not to be repeated in the administration and operation of the Fair Labor Standards Act. Where the accident occurs on or in direct connection with the instrumentalities of transportation, such as tracks and engines, interstate commerce has been used interchangeably with interstate transportation.[11] But where the distinction between what a common carrier by railroad does while engaging in commerce between the states, i. e., transportation, and interstate commerce in general is important, the Federal Employers' Liability Act was construed prior to the 1939 amendment as applying to transportation only.[12]

---

[9] *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 558; *Chicago & North Western Ry. Co.* v. *Bolle,* 284 U. S. 74, 78; *Chicago & Eastern Illinois R. Co.* v. *Commission,* 284 U. S. 296; *New York, N. H. & H. R. Co.* v. *Bezue,* 284 U. S. 415, 419.

[10] Act of August 11, 1939, 53 Stat. 1404; Hearings, Senate Committee on the Judiciary, Amending the Federal Employers' Liability Act, March 28 and 29, 1939, pp. 3–9, 26–30; S. Rep. No. 661, 76th Cong., 1st Sess.

[11] *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 151; cf. *Overstreet* v. *North Shore Corp.,* 318 U. S. 125.

[12] See the cases cited in note 9, *supra.*

The *Smith* [13] case construed the Employers' Liability Act to apply to a cook and caretaker employed by the railroad to care for a camp car used for feeding and housing a group of the railroad's bridge carpenters. At the time of the accident the cook was engaged in these duties. In holding the cook was "in commerce" this Court said:

"The circumstance that the risks of personal injury to which plaintiff was subjected were similar to those that attended the work of train employees generally and of the bridge workers themselves when off duty, while not without significance, is of little moment. The significant thing, in our opinion, is that he was employed by defendant to assist, and actually was assisting, the work of the bridge carpenters by keeping their bed and board close to their place of work, thus rendering it easier for defendant to maintain a proper organization of the bridge gang and forwarding their work by reducing the time lost in going to and from their meals and their lodging place. If, instead, he had brought their meals to them daily at the bridge upon which they happened to be working, it hardly would be questioned that his work in so doing was a part of theirs. What he was in fact doing was the same in kind, and did not differ materially in degree. Hence he was employed, as they were, in interstate commerce, within the meaning of the Employers' Liability Act." 250 U. S. 101, 104.

Such a ruling under the Federal Employers' Liability Act, after the *Bolle, Industrial Commission* and *Bezue* cases, *supra,* note 9, should not govern our conclusions under the Fair Labor Standards Act. These three later cases limited the coverage of the Federal Employers' Liability Act to the actual operation of transportation and acts so closely related to transportation as to be themselves really a part of it. They recognized the fact that railroads

[13] *Philadelphia, B. & W. R. Co.* v. *Smith,* 250 U. S. 101.

carried commerce and were thus a part of it but that each employment that indirectly assisted the functioning of that transportation was not a part. The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it.[14] Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, "production of goods for commerce." [15]

It is not important whether the employer, in this case the contractor, is engaged in interstate commerce. It is the work of the employee which is decisive. Here the employee supplies the personal needs of the maintenance-of-way men. Food is consumed apart from their work. The furnishing of board seems to us as remote from commerce, in this instance, as in the cases where employees supply themselves. In one instance the food would be as necessary for the continuance of their labor as in the other.

[14] Thus we said as to a rate clerk employed by a motor transportation company:

"It is plain that the respondent as a transportation worker was engaged in commerce within the meaning of the Act . . ." *Overnight Motor Co.* v. *Missel,* 316 U. S. 572, 575.

[15] 52 Stat. 1060–61.

Sec. 3. "(b) 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof.

.        .        .        .        .

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

We agree with the conclusion of the District Court and the Circuit Court of Appeals that this employee is not engaged in commerce under the Fair Labor Standards Act.

*Affirmed.*

MR. JUSTICE MURPHY, dissenting:

I think that petitioner is covered by the Fair Labor Standards Act.

In using the phrase "engaged in commerce" Congress meant to extend the benefits of the Act to employees "throughout the farthest reaches of the channels of interstate commerce." *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, 567. We recently construed the phrase to include employees whose activities are so closely related to interstate commerce "as to be in practice and in legal contemplation a part of it." *Overstreet* v. *North Shore Corp.,* 318 U. S. 125, 129, 130, 132. This practical test was derived from cases such as *Pedersen* v. *Delaware, L. & W. R. Co.,* 229 U. S. 146, 151, and *Philadelphia, B. & W. R. Co.* v. *Smith,* 250 U. S. 101, construing similar language in the Federal Employers' Liability Act.[1] The activities of petitioner in cooking for a traveling maintenance crew of an interstate railroad are sufficient to satisfy this test. It was so held in the *Smith* case, 250 U. S. 101, the facts of which are virtually identical with the instant case except for the immaterial difference that petitioner here was employed by an independent contractor rather than by the railroad itself.[2] The reasoning of the *Smith* case is persuasive and should control this one.

---

[1] Act of April 22, 1908, 35 Stat. 65, as it was before the amendment of 1939, 53 Stat. 1404. 45 U. S. C. § 51 *et seq.*

[2] The application of the Fair Labor Standards Act, of course, depends upon the character of the employees' activities, not the nature of the employer's business. *Overstreet* v. *North Shore Corp.,* 318 U. S. 125, 132, and cases cited.

The opinion of the Court, however, rejects the concept of coverage used in the *Smith* case for the narrower test of whether an employee is engaged "in interstate transportation or in work so closely related to it as to be practically a part of it," used in another line of cases under the Federal Employers' Liability Act.[3] I think this is wrong for several reasons.

The Fair Labor Standards Act extends to employees "engaged in commerce," not merely to those engaged in transportation.[4] As the *Bolle* case itself points out: "Commerce covers the whole field of which transportation is only a part." 284 U. S. at 78. Hence, whatever basis there may have been for restricting the coverage of the Federal Employers' Liability Act to employees actually engaged in transportation because of the fact that the Act applied only to those working for employers engaged in interstate transportation by rail,[5] can have no possible application or bearing on the interpretation of the Fair Labor Standards Act. The coverage of this Act is much more extensive. It is not limited to employees of interstate carriers but extends generally to employees engaged in all kinds of commerce, including transportation. Nothing in the Act suggests that it has a narrower application to employees whose work "in commerce" is transportation or work connected therewith, than it has to employees who are engaged in commerce but whose work has nothing to do with transportation. Such a construction is untenable because it would discriminate without reason between different types of employees, all

[3] *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 558; *Chicago & North Western Ry. Co.* v. *Bolle,* 284 U. S. 74; *Chicago & Eastern Illinois R. Co.* v. *Commission,* 284 U. S. 296; *New York, N. H. & H. R. Co.* v. *Bezue,* 284 U. S. 415.

[4] The Act defines "commerce" as: "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." 52 Stat. 1060, 29 U. S. C. § 203.

[5] See *Chicago & North Western Ry. Co.* v. *Bolle,* 284 U. S. 74, 78.

of whom fall within the same general statutory classification of "engaged in commerce."

The necessary effect of rejecting the *Smith* case for the restrictive concept of "in commerce" which was used in the *Shanks*,[6] *Bolle*,[7] *Commission*,[8] and *Bezue*[9] cases is to introduce into the administration of the Fair Labor Standards Act that concededly undesirable confusion which characterized the application of the Federal Employers' Liability Act and prompted the 1939 amendment (53 Stat. 1404) which in effect repudiated the narrow test of the *Shanks* line of cases. The reality of this confusion is readily demonstrable. We have held that a rate clerk employed by an interstate motor carrier[10] and a seller of tickets on a toll bridge over which interstate traffic moves[11] are both "engaged in commerce" within the meaning of the Fair Labor Standards Act. Yet, in the view of the majority of the Court, when the employees' activities are in the field of transportation, the Act apparently will not cover[12] those who work in an interstate carrier's repair shop on facilities to supply power for machinery used in repairing instrumentalities of transportation,[13] or who heat cars and depots used by interstate passengers,[14] or who store fuel for the use of interstate vehicles,[15] or who work on such vehicles when with-

[6] 239 U. S. 556.

[7] 284 U. S. 74.

[8] 284 U. S. 296.

[9] 284 U. S. 415.

[10] *Overnight Motor Co.* v. *Missel,* 316 U. S. 572.

[11] *Overstreet* v. *North Shore Corp.,* 318 U. S. 125.

[12] This is discussed wholly apart from the question of the applicability of § 7 because of the exemption contained in § 13 (b) (1) of the Act. See *Southland Gasoline Co.* v. *Bayley, ante,* p. 44.

[13] Cf. *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556.

[14] Cf. *Chicago & North Western Ry. Co.* v. *Bolle,* 284 U. S. 74.

[15] Cf. *Chicago & Eastern Illinois R. Co.* v. *Commission,* 284 U. S. 296.

drawn for the moment from commerce for repairs.[16] The anomaly of this is clear—there is no sound reason for extending the benefits of the Act to a rate clerk employed in the office of an interstate motor carrier and denying them to the janitor who keeps the office clean and warm, or the employee who works in the carrier's shop on machinery used to repair interstate vehicles, or on the vehicles themselves.

If the applicable provision were "engaged in the production of goods for commerce" instead of "engaged in commerce," our decisions make it clear that employees such as the janitor and the shop tender and probably petitioner would be within the Act. Cf. *Kirschbaum Co.* v. *Walling,* 316 U. S. 517; *Warren-Bradshaw Co.* v. *Hall,* 317 U. S. 88.[17] The phrase "engaged in commerce" should be as broadly construed. In the words of one of the Act's sponsors, the phrase extends to "employees who are a necessary part of carrying on" a business operating in interstate commerce.[18] Petitioner's work was evidently considered necessary to the operation of the railroad, else it would have made no provision for boarding its maintenance crews. We have cast the relevant tests for determining the scope of the two phrases of coverage in substantially similar language. In *Kirschbaum Co.* v. *Walling,* work which "had such a close and immediate tie with the process of production for commerce" as to be "an essential part

---

[16] Cf. *New York, N. H. & H. R. Co.* v. *Bezue,* 284 U. S. 415.

[17] Employees cooking for workers engaged in the production of goods for commerce have been held to be similarly engaged and covered by the Act. *Consolidated Timber Co.* v. *Womack,* 132 F. 2d 101; *Hanson* v. *Lagerstrom,* 133 F. 2d 120.

[18] Speaking for the Senate conferees on the Conference Report, Senator Borah said: ". . . if the business is such as to occupy the channels of interstate commerce, any of the employees who are a necessary part of carrying on that business are within the terms of this bill, and, in my opinion, are under the Constitution of the United States." 83 Cong. Rec. 9170.

502

of it" was held to be "necessary to the production of goods for commerce." 316 U. S. at 525–26. Correspondingly, in *Overstreet* v. *North Shore Corp.*, we held that the phrase "engaged in commerce" includes work which "is so intimately related to interstate commerce 'as to be in practice and in legal contemplation a part of it.' " 318 U. S. at 130. The purpose of the "production of goods for commerce" phrase was obviously not to cut down the scope of "engaged in commerce," but to broaden the Act's application by reaching conditions in the production of goods for commerce which Congress considered injurious to interstate commerce. See *United States* v. *Darby*, 312 U. S. 100. The effect of the Court's decision today, however, is to recognize that federal power over commerce has been sweepingly exercised when an employee's work is in the production of goods for commerce, but to limit it, when the employee's activities are in transportation or connected therewith, to the narrow and legislatively repudiated view of the *Shanks, Bolle, Commission* and *Bezue* cases. Such an unbalanced application of the statute is contrary to its purpose of affording coverage broadly "throughout the farthest reaches of the channels of interstate commerce" to employees "engaged in commerce."

The judgment should be reversed.

Mr. Justice Black, Mr. Justice Douglas and Mr. Justice Rutledge join in this dissent.