## BLUMENTHAL v. GIRARD TRUST CO.

No. 8489.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 11, 1944.

Decided April 3, 1944.

Milford J. Meyer, of Philadelphia, Pa. (Albert M. Hankin and Matthew Kramer, both of Philadelphia, Pa., on the brief), for appellant.

Harold Evans, of Philadelphia, Pa. (David A. Kerr and MacCoy, Brittain, Evans & Lewis, all of Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is a civil action by a building service employee against his employer, the owner of the building, for unpaid minimum wages, overtime compensation, liquidated damages and counsel fees under the Fair Labor Standards Act of 1938.[1] The plaintiff was a caretaker or janitor. of the building which contained six apartments, a garage and two stores. One of the stores was occupied by a tenant who was engaged in interstate commerce in shipping automotive parts, by mail, to points outside the Commonwealth of Pennsylvania. The District Court, on defendant's motion, dismissed the complaint on the ground that it did not state a cause of action under the Act because it did not disclose that the plaintiff was engaged in interstate commerce or in the production of goods for interstate commerce. The appellant argues alternately,—1. That he was engaged in the production of goods for commerce; 2. That he was engaged in commerce; or 3. That the issue is one of fact to be decided by the court below only after a full trial.

■ On his first point the appellant urges that he comes under Section 3(j) of the Act 29 U.S.C.A. § 203(j) which reads:

" 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

In support of this proposition it is .suggested that the word "handled" in the Act includes the wrapping and mailing of a finished product by a merchant, such as the tenant here. Kirschbaum v. Walling, Arsenal Building Corporation, 1942, 316 U.S. 517, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638, is cited as sustaining this thought. That decision stands for no such doctrine. There the tenants were manufacturers of clothing for interstate commerce and the service employees in the two buildings involved, functioned for the benefit of those manufacturers. The Supreme Court held that:

"The work of the employees in these cases had such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce.' "

Walton, Adm'x, v. Southern Package Corporation, 320 U.S. 540, 64 S.Ct. 320, 321, follows the Kirschbaum opinion. In that case a night watchman for a manufacturing plant was held to "make a valuable contribution to the continuous production of respondent's goods." Regarding the relationship of the watchman's employment to production, Mr. Justice Black said at page 543 of 320 U.S., at page 321 of 64 S.Ct. that it:

"* * * had that 'close and immediate tie with the process of production for commerce' which brought him within the coverage of the Act."

Nor is Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83, of any help to the plaintiff. That suit concerned employees of an independent contractor who partially drilled oil wells which wells were later "brought in" by other workmen. Part of the oil obtained moved in interstate commerce. The Supreme Court held at page 91 of 317 U.S., at page 126 of 63 S.Ct., 87 L.Ed. 83:

"* * * they were engaged in a 'process or occupation necessary to the production' of oil."

"* * * drilling a well is a necessary part of the productive process to which it is intimately related."

Under the present facts the manufacture of the automotive parts had been concluded prior to the parts being received by the tenant at all. There was nothing he did with them, that rendered them any more complete or that was intended to be an operation necessary to their final development. He merely wrapped and mailed out the merchandise in exactly the same condition

---

[1] Section 6 of the Fair Labor Standards Act provides that "Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages * * *" not less than the prescribed minimum. 52 Stat. 1062, 29 U.S.C.A. § 206.

Section 7 of the Act provides that "no employer shall * * * employ any of his employees who is engaged in commerce or the production of goods for commerce * * *" for more than a stated number of hours each week. 52 Stat. 1063, 29 U.S.C.A. § 207.

as it was when turned over to him. He was in no way connected with the process of production of the automotive parts themselves.

◼ Plaintiff's next contention is that he is in interstate commerce because of his relationship as janitor or caretaker, of the building, with the particular tenant who admittedly is so engaged. The most recent opinion of the United States Supreme Court on this general subject is McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. There, the employee was a cook who prepared and served meals to maintenance-of-way employees of an interstate railroad under a contract between his employer and the railroad company. The court, discussing the legislative background of the Fair Labor Standards Act, said at page 493 of 319 U. S., at page 1249 of 63 S.Ct., 87 L.Ed. 1538:

"The proposal to have the bill apply to employees 'engaged in commerce in any industry affecting commerce' was rejected in favor of the language, now in the act, 'each of his employees who is engaged in commerce or in the production of goods for commerce.' * * * The selection of the smaller group was deliberate and purposeful."

As to the standard applied, the court said at page 497 of 319 U.S., at page 1251 of 63 S.Ct., 87 L.Ed. 1538:

"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. * * *

"The furnishing of board seems to us as remote from commerce, in this instance, as in the cases where employees supply themselves. In one instance the food would be as necessary for the continuance of their labor as in the other."

While there have been a number of building service cases under the Act, our attention has not been called to any decision allowing recovery under such circumstances as here. Reference has been had to Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460, and Walling v. American Stores, 3 Cir., 133 F. 2d 840. Neither of those decisions are of assistance as they had to do with warehouse employees who actually handled goods which were held to be still enroute in interstate commerce.

In Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287, certiorari denied, 318 U.S. 790, 63 S.Ct. 994, 87 L.Ed. 1156, the tenants of the building were insurance companies. They were held to be engaged in interstate commerce but not in the production of goods for commerce. Recovery was denied building service employees who asserted that they, too, were engaged in interstate commerce because of the nature of the business of the tenants. In Stoike v. First National Bank, etc., 290 N.Y. 195, 43 N.E.2d 482, certiorari denied, 64 U.S. 50, the building was in part occupied by a bank doing interstate commerce business. Again, there was a judgment in favor of the defendant building corporation. In Rosenberg v. Semeria, 9 Cir., 137 F.2d 742, certiorari denied 64 S.Ct. 82, the building services involved were rendered for owners and lessees of apartment houses, office buildings and the like. There were several banks among these and they were substantially engaged in interstate commerce. The Circuit Court of Appeals following McLeod v. Threlkeld, supra, reversed the District Court judgments in this and two other related cases and held that the employees were not engaged in commerce. These are a fair cross section of numerous decisions all to the same effect, namely, that the work by building service employees in buildings of the type with which we are concerned here, does not bear such relationship to the interstate business of the tenants as to justify the conclusion that such employees were engaged in interstate commerce. The nature of the employees' activities is controlling, not the business of the employer. This plaintiff's work in cleaning and taking care of the particular tenant's quarters, at most, only remotely affects that tenant. It cannot be considered a step in the tenant's mail order business.

◼ Since the law is clear and with no dispute as to the facts, the trial court properly disposed of this case on motion under 12(b) (6) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, namely, "Failure to state a claim upon which relief can be granted."

The judgment of the District Court is affirmed.