## CARRIGAN v. PROVIDENT TRUST CO. OF PHILADELPHIA.

### No. 8949.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 9, 1945.

Decided Jan. 3, 1946.

Gerald A. Gleeson, of Philadelphia, Pa., for appellant.

John E. Forsythe, of Philadelphia, Pa. (Yale L. Schekter and MacCoy, Brittain, Evans & Lewis, all of Philadelphia, Pa., on the brief), for appellee.

Before ALBERT LEE STEPHENS, GOODRICH, and McLAUGHLIN, Circuit Judges.

STEPHENS, Circuit Judge.

Plaintiff-employee brought action against defendant-employer for overtime compensation, liquidated damages, and counsel fees under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. From an adverse decision he appeals.

Appellee, a Pennsylvania corporation, conducts a banking and trust company business in Philadelphia. Its main office, a 13-story building at 17th and Chestnut Streets, is occupied by appellee except for 1½ floors, which are rented to two lawyers. It has two branch offices. The branch office at 4th and Chestnut Streets, a 1-story building, is wholly used by appellee.

The banking business of appellee is largely intrastate, although partly interstate, in character. It is not questioned that appellee engages in interstate commerce within the meaning of the Fair Labor Standards Act and is subject to the provisions of the Act.

Appellant Carrigan was for many years employed by appellee as a night and holiday guard at its branch office at 4th and Chestnut Streets. In addition to his guard duties he tended fires, answered the telephone, cleaned, and mopped. One night a week he did similar work at the main office. He claims herein double compensation, computed at overtime rates, for hours worked in excess of the fixed maximum between the effective date of the Fair Labor Standards Act and the termination of his employment on July 5, 1943.

The Act in § 7, 29 U.S.C.A. § 207, fixes maximum hours and overtime compensation for employees "engaged in commerce or in the production of goods for commerce." In § 3(j), 29 U.S.C.A. § 203(j), "production" is broadly defined, and the section specifies that "for the purposes of

this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." "Commerce", on the other hand, is narrowly limited in § 3(b), 29 U.S.C.A. § 203(b), to "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof."

An important distinction between the two definitions is evident. Congress described "production" to include acts merely necessary to the production of goods. "Commerce", on the other hand, is so closely circumscribed that acts merely necessary to commerce are not included. The wide variation in the scope of the two terms has been frequently noted.

In A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, the Supreme Court held the activities of building service employees "necessary to the production of goods for commerce" and therefore within the coverage of the Act because its work was closely tied to the process of production for commerce. The employees concerned in the cited case serviced buildings occupied by tenants principally engaged in the production of goods for interstate commerce. In sharp contrast the Court in McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538, held a cook for maintenance-of-way employees of an interstate railroad not "engaged in commerce" and therefore not within the coverage of the Act.

In the latter case the Supreme Court enunciated a test for ascertaining employees "engaged in commerce" and also distinguished them from the category relating to the "production of goods for commerce." It declared, 319 U.S. 491 at page 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538, that "The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, 'production of goods for commerce.'" See Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Engebretsen v. E. J. Albrecht Co., 7 Cir., 1945, 150 F.2d 602, 605; Convey v. Omaha Nat. Bank, 8 Cir., 1943, 140 F.2d 640; Johnson v. Dallas Downtown Development Co., 5 Cir., 1942, 132 F.2d 287, 289; Stoike v. First Nat. Bank, 1943, 290 N.Y. 195, 48 N.E.2d 482.

In the instant case it is admitted that appellee bank did not produce goods. Hence, appellant-employee was not "engaged in the production of goods for commerce", and cases involving such production are not authoritative herein and are confusing.

Only one question is involved here, namely, is appellant "engaged in commerce" within the meaning of the Fair Labor Standards Act.

This court held in Blumenthal v. Girard Trust Co., 3 Cir., 1944, 141 F.2d 849, that a caretaker or janitor of a building, containing at least one tenant engaged in interstate commerce, was not an employee within the terms of the Act. Therein, the court discussed decisions in analogous cases and concluded, 141 F.2d 849 at page 851, that the janitor's "work in cleaning and taking care of the particular tenant's quarters [those of the tenant engaged in interstate commerce], at most, only remotely affects that tenant. It cannot be considered a step in the tenant's mail order business."

Again in Building Service Employees Int. Union, Local No. 238 v. Trenton Trust Co., 3 Cir., 1944, 142 F.2d 257, this court upheld the reasoning of the Blumenthal case, supra, by affirming a District Court decision, D.C.N.J.1943, 53 F.Supp. 129, on the ground of the close factual similarity to the Blumenthal situation. The District Court decision held building service employees, such as cleaners and watchmen, not engaged in commerce within the meaning of the Fair Labor Standards Act. The employees serviced a fourteen-story office building owned by the employer-bank, which engaged in interstate commerce with respect to its banking activities but which operated the office building as a distinct business. It occupied only two floors; the other twelve were rented to tenants, some of whom were engaged in interstate commerce.

We think that the logic of the opinion in the Blumenthal case, supra, as approved in the Trenton Trust Co. case, supra, com-

76

pels a conclusion in the instant case that appellant is not within the coverage of the Act. All three cases question whether a building service employee is "engaged in commerce" within the meaning of the Act. The facts of the three differ basically only in the proportion of the building occupied by businesses engaged in interstate commerce.

■ As the courts have consistently maintained, it is the work of the employee and not the nature of his employer's business that determines the applicability of the Act. McLeod v. Threlkeld, 1943, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538; Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 132, 63 S.Ct. 494, 87 L.Ed. 656; A. B. Kirschbaum Co. v. Walling, 1943, 316 U.S. 517, 524, 62 S.Ct. 1116, 86 L.Ed. 1638. That the employer's entire business is not interstate in character is unimportant so long as a substantial part of the employee's work relates to the interstate movement of goods. Walling v. Jacksonville Paper Co., 1943, 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460. That a building is wholly occupied by an employer, whose business is partly interstate in character, or only partially occupied by such an employer, is immaterial with respect to the status under the Act of a building guard. It would seem that the instant case cannot be distinguished in character of fact from its predecessors in this court unless appellant's duties of guarding appellee's bank building are "so closely related to the movement of the commerce as to be a part of it." McLeod v. Threlkeld, supra.

■ But for a rather remote possibility that the law would be violated by a person or persons violently and forcefully breaking into the bank premises with the intent of robbery, or that some emergency should arise as a fire or leaky pipe, the watchman's services could have no effect upon commerce, and even then the effect of the watchman's acts would be negative and not acts in commerce. He had no hand whatever in the affirmative acts which constitute commerce. No act within the scope of the appellant's duty touches any facet of the acts of commerce in which the bank was engaged. The watchman's services were separate and distinct from any function of the bank which goes into the conception of interstate commerce.

The judgment of the District Court is affirmed.