### TOBIN v. GIRARD PROPERTIES, Inc.
#### No. 14295.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1953.

Bessie Margolin, Asst. Sol., U. S. Dept. of Labor, Washington, D. C., Earl Street, Regional Atty., U. S. Dept. of Labor, Dallas, Tex., William S. Tyson, Sol., William A. Lowe, Herbert Lasky, Attys., United States Department of Labor, Washington, D. C., for appellant.

1. Florida Statutes, § 625.28 et seq., F.S.A.

Lyon L. Brinsmade and Jack Binion, Houston, Tex., Butler, Binion, Rice & Cook, Houston, Tex., of counsel, for appellee.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

This action was brought by appellant, the Secretary of Labor, seeking to enjoin appellee, Girard Properties, Inc., from future alleged violation of the minimum wage, overtime compensation, and record keeping provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq. The employees involved in the alleged violations are elevator operators and starters, elevator mechanics, janitors, and building maintenance engineers employed by appellee in its office building. The appellee answered admitting noncompliance with the provisions of the Act and set up as a defense that its employees were not "engaged in commerce or in the production of goods for commerce". A trial was had and the District Court found that the building employees were not "engaged in commerce" within the meaning of the Act and dismissed the case. This appeal challenges the correctness of this holding and raises no other issue as appellant abandoned in the District Court his contention that appellee's building maintenance and service employees were engaged "in the production of goods for commerce."

The facts are not in controversy and were found by the District Court to be as follows:

"Defendant (appellee) is a Pennsylvania corporation maintaining its principal place of business in this City and State. It has constructed and now owns and operates a sixteen-story and basement office building located at 1114 Texas Avenue, Houston, Texas. In its architectural and structural characteristics, the building is in all things similar to other office buildings of similar size in this City and other cities of this area. The defendant leases its office space to various tenants and renders the usual type of service incident to the operation of such an office building, consisting of maintaining and servicing a bank of elevators, heating and cooling systems, janitor service, building maintenance, upkeep, etc.

"During the period in question, the rentable area of the defendant's building has been leased to and occupied by approximately thirteen tenants. The thirteenth to sixteenth floors, inclusive, are occupied by firms of attorneys, public accountants, insurance companies, sales offices of large interstate concerns, and offices of a gas transmission company, and the administrative office of one company engaged in the sale of scrap metal. A concession stand occupies a small portion of the first floor, wherein the lessee sells tobacco, soft drinks and confections. The first twelve floors and a portion of the basement are leased by the defendant to the Southwestern Bell Telephone Company (whose tenancy undoubtedly occasioned this litigation). These twelve floors occupied by the Telephone Company are used by it exclusively for executive and administrative activities, such as offices for executives, conference rooms, lounges, recreation and club rooms, etc. The Telephone Company has no communication or transmission equipment whatsoever in the defendant's building, and none of its employees actually engage in any communication or transmission activities upon the defendant's premises.

"Adjacent to the south wall of the defendant's building is an entirely separate and distinct building owned by the Southwestern Bell Telephone Company and known as the Telephone Exchange Building. This telephone building is not the normal office building, having higher ceilings and more heavily reinforced floors in order to accommodate the heavy telephone and transmission equipment. A large amount of such equipment is located in the Telephone Company building.

"Not only are the two buildings separate structures, but the Telephone Company maintains and operates its own building entirely separate and distinct from that of the defendant. The Telephone Company has its own elevators, heating and cooling systems, its own building employees, including janitors, elevator operators, plumb-

ers, electricians, and other maintenance employees. These Telephone Company employees do not perform any work in the defendant's building, nor do the similar employees of the defendant perform any of their work in the Telephone Company building.

"For the convenience of the Telephone Company and its officers and employees who utilize space in the defendant's building, the defendant caused doorways to be cut in the walls of the basement, first, ninth, tenth and eleventh floors of defendant's office building and constructed doors and passageways so as to provide a connection between such floors of the defendant's building and the offsetting floors of the Telephone Company building. As the floor levels of the two buildings are not the same, it is necessary to descend or ascend a series of steps in going from one building to another through these passageways.

"During the period in question, the defendant has been employing from forty-five to fifty persons in the capacities of janitors, elevator operators and starters, mechanics, and building maintenance engineers who perform the types of services which their titles indicate, such as cleaning and maintaining the offices, hallways and restrooms in the building, operating and maintaining in operating condition the elevators, heating and cooling systems, electrical equipment, etc. These employees perform these services for the accommodation and convenience of all of the tenants upon all of the floors. * * *"

On the foregoing facts appellant contends that appellee's building maintenance and service employees are engaged in commerce because their work is an integral part of the operation of the telephone company's interstate communication system. Specifically, we are urged to hold that these employees were engaged in commerce on the authority of Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L. Ed. 1865. In that case the Borden Company owned and operated an office building in which 58% of the rentable space was used for its central offices, where its production of goods for interstate commerce was administered, managed and controlled, although the goods were actually produced at plants located elsewhere. The court held that the executive offices and administrative employees working in the central office of this industrial organization were actually engaged in the production of goods for commerce and that the maintenance employees working in the building were engaged in an "occupation necessary to the production" of goods for interstate commerce within the meaning of § 3(j) of the Act, and were therefore covered by the Act.

The issue in the instant case as to whether the employees involved were engaged in commerce within the meaning of the Act was not before the court in the Borden Case. The two cases also differ in this important particular: that here, unlike in Borden, neither appellee, nor its employees, nor any of its tenants are engaged in the "production of goods for commerce" in appellee's office building. Despite this difference and others apparent appellant claims that the building facilities in the instant case are much more closely linked with the operation of the interstate enterprise than was the Borden building and it is argued that the facts here call for the application of the Borden decision, "unless wholly different principles are to be applied to the 'in commerce' phase of coverage of the Act" than is applied to the "production of goods for commerce" phase of coverage. In this connection the further argument is made that there is no sound basis in the statute, or in the decisions of the Supreme Court and of this Court, for applying basically different standards in determining the applicability of the Act to building maintenance employees who have the same degree of integration with the interstate commerce of the telephone company as maintenance employees of the Borden building had with Borden's production of goods for commerce. We think this argument in effect concedes the inapplicability of the Borden case to the facts of the instant case for the reason that it is our clear understanding that the courts have established a different and much nar-

rower standard for "in commerce" coverage than for the "production of goods for commerce" coverage.

The Fair Labor Standards Act makes a distinction between employees engaged in commerce, and in the production of goods for commerce. By Section 3(j) of the Act, 29 U.S.C.A. § 203(j), reference is made to those engaged in the production of goods for commerce, and in such definition includes any "process or occupation directly essential to the production thereof, in any State." "Commerce", on the other hand, is narrowly limited in § 3(b), 29 U.S.C.A. § 203(b) to "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." It is apparent that the two definitions are not synonomous and that a sound basis exists in the statute for applying a different standard to each of these two phases of coverage. Johnson v. Dallas Downtown Development Co., 5 Cir., 132 F.2d 287, 289, certiorari denied 318 U.S. 790, 63 S.Ct. 994, 87 L.Ed. 1156.

■ The test to be applied in determining whether employees' activities come within the coverage of the Act under circumstances as shown in the case at bar "is not whether the employees' activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." In such determination "It is not important whether the employer * * * is engaged in interstate commerce. It is the work of the employee which is decisive." McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1252, 87 L.Ed. 1538. In that case, and in sharp contrast with some of its earlier holdings, the Supreme Court announced and applied a narrower test for ascertaining whether an employee is engaged in commerce and held a cook for maintenance-of-way employees of an interstate railroad not engaged in commerce and therefore not within the coverage of the Act.

This court has consistently held that the work of maintenance employees in the office buildings occupied by tenants a substantial number of whom are there engaged wholly or in part in interstate commerce, but who do not there produce goods for interstate commerce, is too remote from the "in commerce" activities of such tenants as to cause such employees to be covered by the Act. Johnson v. Dallas Downtown Development Company, supra; Johnson v. Masonic Building Company, 5 Cir., 138 F.2d 817, certiorari denied 321 U.S. 780, 64 S.Ct. 621, 88 L.Ed. 1072; Addison v. Commercial National Bank in Shreveport, 5 Cir., 165 F.2d 937, affirming, D.C., 70 F.Supp. 619; Cochran v. Florida National Building Corporation, 5 Cir., 134 F.2d 615, affirming, D.C., 45 F.Supp. 830. Other courts are in accord. See Ten East 40th Street Building, Inc. v. Callus, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806; Carrigan v. Provident Trust Co. of Philadelphia, 3 Cir., 153 F.2d 74; Lofther v. First Nat. Bank of Chicago, 7 Cir., 138 F. 2d 299; Rucker v. First Nat. Bank of Miami, Okl., 10 Cir., 138 F.2d 699; Stoike v. First Nat. Bank, 290 N.Y. 195, 48 N.E.2d 482, certiorari denied 320 U.S. 762, 64 S. Ct. 50, 88 L.Ed. 455. In Johnson v. Dallas Downtown Development Company, supra, the appellee owned and operated an office building. Offices in the building were leased or rented to numerous tenants, none of whom were engaged in the production of goods in or about the building, but a substantial number of such tenants were engaged in some type of interstate commerce or in commerce within the meaning of the Act. The appellants were employed as elevator operators and janitors and claimed they were under the Act. This court, after quoting Mr. Justice Cardozo to the effect that "What is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation [132 F.2d 290]" stated: "Applying the common sense rule, we hold that Appellants are not within the coverage of the Act."

In Stoike v. First National Bank, supra, the plaintiff employed to clean portions of defendant's bank and office building, claimed he was under the Act. The court

stated [290 N.Y. 195, 48 N.E.2d 484], "even upon the assumption that its banking business is interstate commerce, * * It is our conclusion that the cleaning operations which plaintiff was required to perform in defendant's banking quarters were not so closely related to the many banking services performed there that we can say as matter of law that plaintiff's cleaning was a part of such banking services and therefore, that he was *engaged in* interstate commerce. The plaintiff's work of cleaning and dusting the quarters in which the functions of banking are performed, although it may contribute remotely to the comfort and convenience of those whose services are vital to its business, is not a step in the process of banking. Indeed, as we consider the activities of those who conduct the vital functions by which the business of the defendant bank is accomplished, the essential characteristics of that portion of its banking service which is interstate commerce are lost before we reach the position held by the plaintiff. If, under the guise of construing section 7 (subd. a), we extend its application beyond those employees who are 'engaged in' interstate commerce and include the vast number of employees whose work, like that of the plaintiff, only remotely *affects* commerce, we would extend the operation of the Act beyond its intended scope."

"The Fair Labor Standards Act puts upon the courts the independent responsibility of applying *ad hoc* the general terms of the statute to an infinite variety of complicated industrial situations." The question in every case is "whether the particular situation is within the regulated area." Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1120, 86 L.Ed. 1638. In the Kirschbaum case the court was concerned with maintenance employees of buildings concededly devoted to manufacture for commerce. The Borden case involved Borden Company employees who worked in a building which the company owned and itself made use of as part of its production of goods for commerce. In Ten East 40th Street Building, Inc. v. Callus,

supra, a third situation was presented differing both from Kirschbaum and Borden. In Callus as in Borden there was involved the broader provisions of the Act dealing with the production of goods for commerce. In the Callus case as here the building was owned by an independent company whose business it was to operate and manage the building, and to lease the space to various tenants. The respondents, the building employees, performed the usual and customary duties of building maintenance, elevator starters and operators, window cleaners and the like; and the building was devoted exclusively to offices and no manufacturing was carried on within it. In the Callus building approximately 42% of the rented area was occupied by the executive or administrative offices of tenants who were engaged elsewhere in the production of goods for commerce. Here, the executive and administrative offices of the Telephone Company occupy about 70% of the rented area and the company is not engaged in the production of goods for commerce.

In deciding that the Callus building employees were not engaged in occupations necessary to the production of goods for commerce the Supreme Court rested its decision on the broad ground "that Congress in enacting this statute plainly indicated its purpose to leave local business to the protection of the states" and "Renting office space in a building exclusively set aside for an unrestricted variety of office work spontaneously satisfies the common understanding of what is local business and makes the employees of such a building engaged in local business."

█ The decision in each case must turn upon its own peculiar facts. Applying the reasoning and the principles enunciated in the cases cited we experience no difficulty in reaching the conclusion that the District Court decided correctly that the employees were not engaged in commerce under the Fair Labor Standards Act.

The judgment is

Affirmed.