MITCHELL, Secretary of Labor
v.
JOYCE AGENCY, Inc.
No. 10936.

United States Court of Appeals
Seventh Circuit.
March 29, 1954.

Rehearing Denied April 23, 1954.

Stanford Clinton, Robert A. Sprecher, Pritzker, Pritzker & Clinton, Crowley, Sprecher & Weeks, Frank A. Karaba, Chicago, Ill., of counsel, for appellant.

Stuart Rothman, Sol., Bessie Margolin, Chief of Appellate Litigation, U. S. Department of Labor, Washington, D. C., Herman Grant, Regional Atty., Department of Labor, Chicago, Ill., E. Gerald Lamboley, Harold S. Saxe, Attys., U. S. Department of Labor, Washington, D. C., for appellee.

Before MAJOR, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

This is an appeal by the defendant, Joyce Agency, Inc., from a judgment entered on May 7, 1953, by the United States District Court for the Northern District of Illinois, Eastern Division, finding that the defendant has violated sections 7 and 15(a) (2) of the Fair Labor Standards Act of 1938, as amended, Act of June 25, 1938, c. 676, 52 Stat.

1060; 29 U.S.C.A. § 201 et seq., as amended, 63 Stat. 910, and ordering, pursuant to section 17, that the defendant be enjoined from further violating the provisions of section 15(a) (2) of the Act.

The question for decision is whether defendant's employees were engaged in interstate commerce or in the production of goods for interstate commerce at four warehouses of Goldblatt Bros. and at defendant's central office, so as to bring them within the coverage of the act.

From the parties' stipulation of facts the following situation appears to have existed at all times hereinafter mentioned.

Defendant is an Illinois corporation with its central office at 343 South Dearborn Street, Chicago. It engages in the business of furnishing watchman, guard, detective, fire inspection and shopping service to Goldblatt Bros. Inc., hereinafter called "Goldblatt", and employs 72 persons.

Goldblatt owns and operates a chain of 14 retail department stores. Of these stores, 10 are in the city of Chicago and one in each of the cities of Joliet, Illinois, Hammond, Gary, and South Bend, Indiana. It has a central office in Chicago, Illinois, where the administrative work in connection with Goldblatt's organization is performed, including the purchase of various kinds of merchandise usually found in a large department store. To service its 14 department stores, Goldblatt maintains in Chicago, Illinois, warehouses at 3913 South Wentworth Avenue, 3161 South Ashland Avenue, 201 East 63rd Street, and 328 South Wabash Avenue. At these warehouses goods are received and stored and thereafter shipped to the defendant's various retail stores. Most of the goods received are from points outside Illinois and a substantial part of the goods shipped to retail stores is to those located in Indiana. At one of the warehouses, which is known as the Ashland warehouse, there are also a furniture renovating shop, a radio and television clinic, a carpet and linoleum department, and a sewing machine de-

partment, as well as a garage where nine persons are employed by Goldblatt in maintaining its motor transportation fleet.

Defendant's employees include guards and watchmen who guard the warehouses and their contents against all risks, including fire, and the loading and unloading of goods on the loading platforms of the warehouses, check all packages being carried out, keep records of the names of people working after closing hours for the use of the watchmen, open railroad doors to receive freight cars during the night, control ingress and egress of trucks in and out of the garage, and about 5 A. M. check out a truck carrying advertising material to the Indiana stores. Certain guards check the locks and seals on trucks before permitting them to unload or to leave the warehouses when loaded. Guards performing this particular service will be hereinafter referred to as the "seal-checking guards". Defendant's employees do not physically handle the goods received or shipped, except insofar as they may handle stolen goods recovered by them, valued at approximately $300.00 per year.

The furniture renovating shop reconditions, upholsters, repairs, replaces broken parts, assembles, refinishes and polishes furniture which has been damaged while on display in the stores or in transit. The clinic removes television and radio sets from their cases, repairs new, display and customers' sets. The carpet and linoleum department cuts carpets and linoleums to size, edges and binds carpeting and prepares carpets and linoleum for laying. The sewing machine shop unpacks sewing machines and their accessories and cabinets, whereupon it attaches the accessories to the machines and the latter are tested and then installed in cabinets or portable cases.

Defendant has two watchmen at Goldblatt's Lexington bakery and the parties agree that their activities constitute production of goods for commerce and hence they are covered by the act.

Defendant employs about ten persons in its central office. They perform administrative work in connection with defendant's furnishing watchman, guard, detective, fire inspection and shopping service to Goldblatt. They hire, assign and direct the work of all employees employed by defendant in Goldblatt's warehouses and stores. At the central office employees maintain all the books and records in connection with defendant's business. Defendant's payroll is kept there and from there weekly bills are sent to Goldblatt for the payroll plus social security and unemployment compensation contributions, the latter of which is sent by defendant to the State of Illinois or the State of Indiana and the United States Collector of Internal Revenue. At the central office, as a part of her duties, one employee communicates with the various employees of defendant stationed in the Goldblatt warehouses and stores and advises them when a truck will arrive at a warehouse after closing time. When a bad check is cashed in a Goldblatt store, that fact is telephoned to this woman, who, in turn, telephones the same information to defendant's detectives in all Goldblatt stores. There is a direct telephone line from the central office to all Goldblatt stores and warehouses.

Counsel for both parties have in their briefs treated the Fair Labor Standards Act of 1938, as subsequently amended, including the 1949 amendment to section 3 thereof, 29 U.S.C.A. § 203, as governing this case.

■ Under the plain language of the act we are convinced that plaintiff was required to show that Goldblatt was engaged in the production of goods for interstate commerce and that defendant's employees now under consideration were engaged in occupations directly essential to such production or that they were employees engaged in interstate commerce. Engebretsen v. E. J. Albrecht Co., 7 Cir., 150 F.2d 602, at page 604.

Plaintiff contends that the Goldblatt warehouse employees are engaged in "handling" and "working on" goods intended for interstate shipment, which, under the definition of "produced" in sec-

tion 3(j) and the decisions of this court and of the United States Supreme Court, constitutes "production of goods for commerce", and that the employees of defendant, which furnishes the guard, watchman, detective, and fire inspection service for these warehouses, are engaged in a "closely related" process or occupation "directly essential" to such production within the meaning of section 3(j) and are, therefore, engaged in producing goods for commerce.

Section 3(j), as amended, reads as follows:

"(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."

■■ As to the work done in the furniture renovation shop, television and radio clinic, carpet and linoleum and sewing machine shops, there is no production. Such work constitutes the rendering of services upon articles already produced. Insofar as these activities pertain to goods theretofore sold to Goldblatt's customers, they fall within the exemption of a retail servicing occupation in accordance with the Regulations issued by the Wage and Hour Division of the Department of Labor, which provide in Section 779.14(c) in part as follows:

"Work performed on the customer's own goods where the completed job will not result in the creation of a different product from that which the customer brought in will be considered as 'services' for purposes of the exemption, and, if recognized in the particular industry as retail services, will be considered as such in determining the applicability of

section 13(a) (2). For example, the recapping of a tire for a customer, the reupholstering of a chair for a customer, the repairing of an automobile for a customer regardless of the degree of repairs, the rebuilding of a pair of shoes for a customer, the rebuilding of a typewriter for a customer, will be regarded as the performance of services for purposes of the application of Section 13(a) (2) exemption to retail or service establishments and employees employed by them."

As to those activities relating to Goldblatt's own goods, the work done in the clinic and shops does not create a different product, and hence does not constitute production.

■ From a consideration of the processes occurring in the warehouses it is inescapable that there is physical touching by Goldblatt's employees of the goods in the warehouses which are intended for movement in interstate commerce. Plaintiff contends also that these goods are "worked on" by Goldblatt employees in the warehouses. The words "handled" or "worked on" include every kind of incidental operation preparatory to putting goods into the stream of commerce. But there is a distinction between handling in transportation, on the one hand, and producing, on the other hand, which is put to naught by a contention such as plaintiff's that by definition everyone who handles goods is thereby made a producer. As was said in Western Union Tel. Co. v. Lenroot, 323 U.S. 490, at page 504, 65 S.Ct. 335, at page 342, 89 L.Ed. 414:

"One would not readily impute such an absurdity to Congress; nor can we assume, contrary to the statute, that 'produced' means one thing in one section and something else in another. To construe those words to mean that handling in carriage or transmission in commerce makes one a producer makes one of these results inevitable. Congress, we think, did not intend to obliterate all

distinction between production and transportation."

In the warehouses, Goldblatt's employees receive, store, in some cases split up large packages of goods into smaller ones, and re-ship. These are not acts of production. They do nothing to affect the character of the articles themselves. Such handling is not production. There is no "working on" the goods by these employees. It will be noted, therefore, as a matter of fact that in the case at bar the employees of Goldblatt do not produce any goods in these warehouses. There being no production in the warehouses by Goldblatt employees, it cannot be said that any duties of defendant's employees on said premises are performed in any process or occupation related or essential to the production of goods, within the meaning of section 3 (j).

In Engebretsen v. E. J. Albrecht Co., supra, relied upon by plaintiff, this court concluded that a janitor and watchman performed a service essential to an operation which the court found to be the production of goods for commerce, and, therefore, held that that employee was covered by the act. That case is not controlling here where we find there was no production of goods for commerce carried on in the Goldblatt warehouses.

Plaintiff also contends that the receiving, handling, and shipping of goods interstate at the Goldblatt warehouses constitutes engagement "in commerce" and that the guards, watchmen, detectives and fire inspectors, who are employed by the defendant to furnish a highly integrated fire and theft protection service at such warehouses, who control the departure of interstate shipments and who protect the actual transportation of the goods, are "engaged in commerce".

The real test as to defendant's employees is whether they (the employees themselves) are engaged in an interstate commerce activity. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. We must look to the employee's activity rather than the employer's activity, so far as " 'engaged in commerce' " determines liability. Engebretsen v. E. J. Albrecht Co., supra, 150 F.2d at page 605. At the outset of this part of the discussion, it is to be noted that the seal-checking guards examine the seals on trucks before incoming trucks are unloaded and after outgoing trucks are loaded and sealed. Until incoming trucks are actually unloaded and the contents deposited on the warehouse platform they are in interstate commerce, and after outgoing trucks are loaded and sealed they are also in interstate commerce. The seal-checking guards in performing their function of checking these seals in the interest of security of the contents of the trucks are engaged in interstate commerce and are, therefore, subject to the act. Walling v. Goldblatt Bros., Inc., 7 Cir., 128 F.2d 778, at page 782.

Defendant admits in its brief that some of the Goldblatt warehouse employees are involved in interstate commerce (appellant's brief, 50). The facts in this case show, however, that none of the employees of defendant working at the warehouses, except the seal-checking guards, is himself engaged in commerce.

It will be noted that section 7(a) of the act, 29 U.S.C.A. § 207(a), provides:

"(a) Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce * * * for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

In Carrigan v. Provident Trust Co. of Philadelphia, 3 Cir., 153 F.2d 74, the court, in considering whether a bank guard was subject to the act, said, beginning at page 74:

"In § 3(j), 29 U.S.C.A. § 203 (j), 'production' is broadly defined * * *. 'Commerce', on the other hand, is narrowly limited in § 3(b), 29 U.S.C.A. § 203(b) * * *.

"An important distinction between the two definitions is evident. Congress described 'production' to include acts merely necessary to the production of goods. 'Commerce', on the other hand, is so closely circumscribed that acts merely necessary to commerce are not included. The wide variation in the scope of the two terms has been frequently noted."

The court cited McLeod v. Threlkeld, 319 U.S. 491, at page 497, 63 S.Ct. 1248, 87 L.Ed. 1538, saying that there it was declared:

"that 'The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it. Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, "production of goods for commerce." '

\*    \*    \*    \*    \*    \*

"Only one question is involved here, namely, is appellant 'engaged in commerce' within the meaning of the Fair Labor Standards Act.

"This court held in Blumenthal v. Girard Trust Co., 3 Cir., 1944, 141 F.2d 849, that a caretaker or janitor of a building, containing at least one tenant engaged in interstate commerce, was not an employee within the terms of the Act. \*    \*    \*

"As the courts have consistently maintained, it is the work of the employee and not the nature of his employer's business that determines the applicability of the Act. \*    \*    \* That the employer's entire business is not interstate in character is unimportant so long as a substantial part of the employee's work relates to the interstate movement of goods. Walling v. Jacksonville Paper Co.,

1943, 317 U.S. 564, 572, 63 S.Ct. 332, 87 L.Ed. 460. That a building is wholly occupied by an employer, whose business is partly interstate in character, or only partially occupied by such an employer, is immaterial with respect to the status under the Act of a building guard. It would seem that the instant case cannot be distinguished in character of fact from its predecessors in this court unless appellant's duties of guarding appellee's bank building are 'so closely related to the movement of the commerce as to be a part of it.' \*    \*    \*

"But for a rather remote possibility that the law would be violated by a person or persons violently and forcefully breaking into the bank premises with the intent of robbery, or that some emergency should arise as a fire or leaky pipe, the watchman's services could have no effect upon commerce, and even then the effect of the watchman's acts would be negative and not acts in commerce. He had no hand whatever in the affirmative acts which constitute commerce."

There is nothing stated in Carrigan v. Provident Trust Co. of Philadelphia, supra, which is inconsistent with the holding in Walling v. Goldblatt Bros., Inc., 7 Cir., 128 F.2d 778.

Accordingly, we hold that none of the defendant's employees in the warehouses, with the exception of the seal-checking guards, is covered by the act.

■■■■■ As to the employees in defendant's central office, it appears that there is one employee who gives a substantial part of her time to making and receiving telephone calls to and from defendant's guards at the Goldblatt warehouses and stores, some of the latter being in the State of Indiana. It will be noted that these telephone calls are from and to persons entirely in the service of defendant. When employees talk to each other in performing their duties for their employer, they are not engaged

in commerce as that word is used in the act now under consideration. That is true whether they sit at adjoining desks or are at the opposite ends of a telephone wire and regardless of whether that wire crosses state lines. This is still true even though another, who owns the wire, may be engaged in commerce in the transmitting of the sound of human voices over that wire. Section 3 of the act, 29 U.S.C.A. § 203, declares that " 'Commerce' means trade, commerce, transportation, transmission, or communication" interstate. As was said in Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395, at page 398:

"Transportation is only a part of it. Trade is another part, and according to the old maxim, it takes two to make a trade. Importer as well as exporter, buyer as well as seller, is a participant; and ordering and paying for goods are included."

If it takes two to make a trade, these two must be the employer and another person or firm with which he is dealing. Communication means from one person to another; that is from the employer to some other person or firm. It cannot reasonably be said to mean a communication by one of the employees of an employer to another employee of the same employer. In the case at bar, the person doing the telephoning to points in another state did not call anyone outside of the defendant's own staff of employees. There was no communication within the definition of commerce contained in the act. Neither by the statutory definition nor as commonly understood does "commerce" include communication by word of mouth between the servants of a common employer in the course of the latter's business. Telephoning by an employee to persons not in the employer's organization, on behalf of his employer, for the benefit of a third party with whom the employer has a contract for such service, would be an act in commerce. But that is not the factual situation which confronts us. It follows that the telephoning done by the employee in question does not bring her under the act.

This conclusion is strengthened by the fact that this particular employee is not engaged in selling and delivering across state lines or at buying and receiving across state lines, and hence would not fall within the category referred to in Fleming v. Jacksonville Paper Co., supra, 128 F.2d at page 398, where the court said:

"Those who work either at selling or delivering across State lines, or at buying and receiving across State lines, are employed in commerce, whether they write the letters, keep the books, or load and unload or drive the trucks."

There are other employees in the central office of defendant. Their duties include the supervision of the various guards and watchmen stationed by defendant in the Goldblatt warehouses and stores, as well as the keeping of payroll records and the making of payments to said employees of salaries, less tax deductions. Inasmuch as the only employees in this group serviced by the central office who are engaged in interstate commerce are the seal-checking guards, of whom there are only three, and two watchmen at the Lexington bakery, which is engaged in production, and since the record is silent as to the amount of time actually expended by the employees in the central office in connection with these five employees, the plaintiff has not established that in connection therewith central office employees are devoting a substantial part of their time to these five employees, Walling v. Jacksonville Paper Co., 317 U.S. 564, at page 572, 63 S.Ct. 332, 87 L.Ed. 460, and hence this court cannot say that the said central office employees are covered by the act. In all other respects it is clear on this record that none of the central office employees of defendant is subject to the act.

### Conclusion.

For the reasons above stated, we conclude that as to the seal-checking guards the decree of the court below is affirmed and in all other respects it is reversed.

Affirmed in part; reversed in part.