## HOLMES v. ELIZABETH TRUST CO.

### Civ. A. No. 7295.

District Court, D. New Jersey.

June 16, 1947.

Milton B. Levin of Newark, N.J., for plaintiff.

Koestler & Koestler, of Elizabeth, N.J., for defendant.

MEANEY, District Judge.

This action is brought under sections 15 and 16 of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The plaintiff was employed for a period of approximately five years as a building superintendent, with certain claimed additional duties which it is alleged will bring him within the wage requirements of the Act. The defendant, the Elizabeth Trust Company, maintains a branch office in the building owned by it, in which plaintiff is employed.

The matter came on before the Court on plaintiff's motion to strike the answer of the defendant, for a partial summary judgment, to establish issues and for an order for leave to amend the complaint.

At the hearing on said motion, leave was granted by the Court to plaintiff to amend his complaint to include not only the allegation that the defendant was "engaged in interstate commerce" but in "the production of goods for commerce" as well.

In the course of the oral hearing on the above motion, it quickly became apparent that unless the defendant bank was "engaged in commerce" or "in the production of goods for commerce" the plaintiff would have no basis for his claim of himself being engaged in one of the classes above specified. To that end, the court directed counsel to confine their arguments to that limited question.

The determination herein will be confined to the narrow question immediately at issue and will in no manner be determinative beyond it. In so far as plaintiff's motion is concerned, it will come on for such further hearing, in the light of this determination, as may be necessary under the circumstances.

The distinction between engaged "in commerce" and "in the production of goods for commerce" is a nice one, and important because the Act itself makes a distinction between the two catagories. Mennicucci v. F. & P. Brakeline Service, D.C.N.J., 58 F. Supp. 720, 721.

Thus the Circuit Court for the third circuit in Carrigan v. Provident Trust Co. of Philadelphia, 3 Cir., 153 F.2d 74, 75, has recently stated "An important distinction between the two definitions is evident. Congress described 'production' to include acts merely necessary to the production of goods. 'Commerce', on the other hand, is so closely circumscribed that acts merely necessary to commerce are not included. The wide variation in the scope of the two terms has been frequently noted." The distinction between the two definitions appears in two Supreme Court cases and is controlling.* Thus it must be determined not only whether the defendant bank falls within the broad scope of the Fair Labor Standards Act, but also under precisely which definition it is so found. In so far as this plaintiff is concerned, the distinction may be controlling since in the ultimate determination it is the employee's activities that are determinative. Whether this plaintiff's activities are such as bring him within the provisions of the Act may depend, therefore, under which of the two definitions this defendant bank is found to fall.

At the outset, it may be stated that, for the purposes of this argument only, the defendant admits that it is engaged in interstate commerce. It denies, however, that the bank "produces" goods for commerce, that any "goods for commerce" were produced in the building in which plaintiff was employed, that the plaintiff was engaged in interstate commerce or that plaintiff was engaged in the production of goods for commerce.

The various arguments directed at the particular kind of work performed by this plaintiff need not here be examined. For the purposes of the present argument the Court does not undertake to determine whether the plaintiff's employment brings him within the provisions of the Act, either as engaged in "the production of goods for commerce" or as "engaged in commerce."

The question presently to be determined is concerned exclusively with the category into which the branch of the defendant bank, located in the building in which this plaintiff is employed, shall fall.

In insisting that the defendant bank is engaged "in the production of goods for commerce" the plaintiff relies entirely upon the recent decision handed down by Judge Learned Hand in Bozant v. Bank of New York, 2 Cir., 156 F.2d 787.

In that case the court had before it a claim for overtime made under the Fair Labor Standards Act, Sec. 216(b) of Title 29 U.S. C.A., by twenty-two "maintenance" or "service" employees who took care of the building which the Bank of New York owned, and in which that Bank occupied about fifty percent of the building. The question before that court was whether the defendant bank and other banks in the building were engaged in "the production of goods for commerce" under 203(j) of title 29.

In determining that the defendant bank in that case *was* engaged in the production of goods for commerce the court concluded as follows [156 F.2d 790] : "In so far as the Bank's business consists of preparing, executing or validating bonds, shares of stock, commercial paper, bills of lading and the like, it is engaged in 'producing goods for commerce'; and included in this are any activities necessary to the effectiveness of the documents even though, as an example, it be no more than registering a share or a series of bonds. On the other hand the mere writing of letters or the drawing of papers, which have no value of their own except as records, are not to be counted."

Judge Hand in the Bozant case, in reaching the conclusion noted above, observed that bills of exchange, negotiable notes and most commercial paper are also usually treated as "specialties" and in that respect assimilated to bonds. For some purposes shares of stock and bills of lading are in the same class. The court then stated further that it by no means unduly strains 203 (j) to regard the preparation, execution or other validation of such documents as the actual "production of goods".

---

* A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 1120, 86 L.Ed. 1638, dealing with activities "necessary to the 'production' of goods for commerce". McLeod v. Threlkeld, 1943, 319 U.S. 491, 63 S.Ct. 1248, 87 L. Ed. 1538, dealing with activities related to "engaging in commerce".

The Bozant case is the only case found dealing directly with the question of whether a bank is engaged in the production of goods for commerce. The case must be construed rather strictly and is not precedent for finding all banking institutions to be so engaged. The defendant bank in the Bozant case was a large New York Bank, engaged in greatly diversified banking activities and located in the heart of the financial capital of the nation. Its activities, found by Judge Hand to constitute the "production of goods" for commerce, included preparing, executing or validating bonds, shares of stock, commercial paper, bills of lading, and the like.

Such activities are virtually nonexistent in the daily conduct of the banking business carried on at the branch office of the defendant in the present case. The activities engaged in by this defendant were those ordinary and regular banking practices of a local community bank.

The deposition of Harry G. Pflug, secretary of the defendant, Elizabeth Trust Company, was to the effect that the branch office activities were limited to the extent that no loans or discounts were made there. He stated that all clearings of checks drawn on other banks were made through the main office. He testified that the bookkeeping system was centralized in the main office, that deposit tickets with checks for deposit are sent up to the main office three times per day, that out of town checks, after being deposited by customers in the branch bank and after being forwarded to the main office, were sorted and forwarded to corresponding banks in New York, that the branch office handled OPA token accounts, that the branch bank handled "buy" and "sell" orders on securities for customers of the bank, which orders were negotiated through a New York broker by telephone and confirmed in writing, that on sell orders, if a large amount were involved, securities were forwarded with sight drafts attached, through the New York corresponding bank for collection. This was accomplished by sending the securities to the main office from which they were sent by registered mail to New York.

Checks made out by customers of the defendant, payable to payees outside the State of New Jersey, are cleared through the Federal Reserve Bank and forwarded daily to the defendant for payment at the main office.

Mr. Robert C. Baldwin, President of the defendant bank, in his deposition, testified that checks printed for customers at one time had thereon the address of the branch where the account was opened, but that this practice had been dropped. Out of town checks are set up in batches and forwarded to the main office where they are photographed and sent up in a "cash letter" to the New York bank for collection. Baldwin further testified that checks drawn on the Elizabeth Bank to out of state payees would be forwarded eventually from either the Federal Reserve or other corresponding bank in New York, where, if the accounts contained sufficient funds, a check in such amount drawn on the New York bank is then sent by the defendant to be charged against the defendant's account with such New York bank.

Further testimony disclosed that once a week shipments of currency, both of metal and paper, were made from both the main office and the branch offices of the defendant. Such shipments were made by Wells Fargo to the post office and thereafter shipped to New York. Baldwin also stated that, occasionally in the normal course of business, the defendant bank received and transmitted securities of various kinds on behalf of its customers.

■ From the testimony above set forth, it seems apparent that this defendant was not "engaged in the production of goods" within the meaning of that phrase as used in the Act or within the scope of the holding in the Bozant case, supra. It nowhere appears, that this defendant, either at its branch office or in its main office, engaged in the preparation of securities of any sort, it did not prepare stocks or bonds or validate the same, it does not appear that this defendant issued commercial paper, bills of lading or other instruments of business and commerce.

It is, of course, true that checks drawn on defendant bank found their way into interstate commerce, that sight drafts accompanied securities sold for customers, such drafts being prepared by the bank and

sent to the New York brokers, and that checks on the defendant's account, sent to corresponding banks in New York to be charged against such account after payment on out of state payee checks, were drawn on the defendant bank.

Those activities, however, do not constitute a production of goods. To find otherwise would be to include in "production" all incidents of almost any business which in reality are not the production of goods at all.

On the testimony noted, there seems to be little question but that the defendant is engaged in interstate commerce. Indeed, as earlier noted, the defendant, for the purpose of this argument, admits that it is so engaged.

The foregoing determination is dispositive only of the limited question before the court. Plaintiff will be permitted further oral argument on the remaining issues raised by their motions.