McCOMB, Adm'r Wage and Hour Division, v. CASA BALDRICH, Inc.

Civ. No. 4653.

United States District Court
D. Puerto Rico, San Juan Division.

Nov. 27, 1948.

Kenneth P. Montgomery, Regional Atty., U. S. Dept. of Labor, of Santurce, Puerto Rico, for plaintiff.

Rene Benitez and Orlando J. Antonsanti, both of San Juan, Puerto Rico, for defendant.

CHAVEZ, District Judge.

This is an action to enjoin defendant from violating the provisions of Sec. 15 (a) (2) of the Fair Labor Standards Act, Act of June 25, 1938, c. 676, 52 Stat. 1060, Title 29 U.S.C.A. § 215(a) (2) as amended.

The allegations contained in paragraphs VII and VIII of the complaint alleging violations of Sec. 215(a) (5) have been stricken upon motion of the plaintiff.

The Administrator of the Wage & Hour Division, U. S. Department of Labor, charges in his complaint that the defendant repeatedly has failed to pay statutory minimum wage and overtime to certain employees of the defendant corporation who are engaged in work subject to the Act. In its answer, the defendant denies any violations of the Act, but admits that in some instances and as to some employees, it pays wages less than 28¢ per hour (the applicable minimum) and admits that it has employed them for work weeks in excess of 40 hours without compensating them at rates of not less than one and one-half times their regular rates.

The defendant in its answer denies that its employees are engaged in processes or occupations necessary to the production of goods for interstate commerce. Defendant also raises in its answer an affirmative defense by alleging that its employees are engaged in a retail or service establishment and are therefore exempt under the express terms of Sec. 13(a) (2) of the Fair Labor Standards Act. Title 29 U.S.C.A. § 213(a) (2).

The issues thus raised by the pleadings in this case are as follows:

1. Are defendant's employees who are engaged in the printing of forms, cards, leaflets, pamphlets, books and other matters engaged, on the facts in this case, in processes or occupations necessary to the production of goods for commerce within the meaning of the Fair Labor Standards Act?

2. If the employees are employed in the processes or occupations which are necessary for the production of goods for commerce are they nevertheless exempt from the Wage and Hour provisions of the Fair Labor Standards Act by reason of employment in a retail or service establishment within the meaning of Sec. 213(a) (2) of the Fair Labor Standards Act?

Defendant corporation operates in San Juan, Puerto Rico, a printing shop and a

stationery store. The printing shop and stationery store are adjacent but they occupy separate quarters and there is no interchange of employees. The printing shop and stationery store are physically separated and the store employees do not perform any work within the printing plant. Printing orders are taken either by defendant's manager or by Mr. Baldrich and when the orders are approved they are sent to the printing shop. Upon receipt in the printing shop, orders are processed as necessary and the operations to be performed on them are assigned, as occasion demands, to compositors, pressmen, type setters, and to other employees in the shop. There is no segregation of workers on any basis other than occupational function, and it appears that all workers in the printing plant work, as the daily requirement of the business may require, on any and all work coming into the plant.

The complaint in this case is premised on their printing for two different classes of customers: (1) Customers who are engaged in interstate commerce, and (2) customers who are engaged in the production of goods for interstate commerce. The parties by stipulation, have placed before the Court lists of customers who are engaged in commerce and those who are producing goods for commerce. An analysis of the lists shows that 31 of defendant's customers were engaged exclusively in commerce and did not produce any goods for commerce. A further breakdown of these 31 firms shows that one was engaged in warehousing, two in the distribution of printed matter, two in shipping, two in the hotel business, three in air transportation, four in radio communications, nine were distributors and importers, one was a banking concern, and one a consular office, and one a haberdasher.

The stipulation shows that nineteen of defendant's customers were engaged in the manufacture of goods for commerce. A breakdown of this group shows seven customers engaged in the production of sugar and molasses for commerce; five in producing wearing apparel; two in producing tobacco products; one in the manufacture of cement used in the construction and repair of highways and buildings used in the production of goods, and one in the production of glass containers sold to manufacturers of export rum.

The first question arises as to coverage of defendant's employees by reason of their being engaged in printing job orders of the first group of firms. Were these employees, because they were printing something for customers, engaged in commerce, themselves, "in commerce", under the Act and the decisions?

■ Congress, in approving the Fair Labor Standards Act, did not exert to the full its commerce powers. In dealing with the production of goods for commerce it extends the coverage of the Act with respect to production, by definition, to any employee employed in producing, manufacturing, mining, handling, transporting or in any other manner working on such goods, or in any process or occupation necessary to the production thereof. In speaking of coverage of employees engaged in commerce, as distinguished from employees producing goods for commerce, Congress limited coverage to employees actually in or so closely related to the movement of Commerce as to be a part of it. "The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it". McLeod v. Threlkeld, 319 U.S. 491, at page 497, 63 S.Ct. 1248, at page 1251, 87 L.Ed. 1538.

The use of envelopes, forms and advertising material by the first group of defendant's customers in the course of their rutinary commercial transactions does not bring defendant's printing shop employees within the coverage of the Act. Although the printing, by said employees, of envelopes, forms etc., may indirectly affect the movement of commerce, it is not so closely related to the movement of commerce as to be a part of it.

■ However, the government's case does not rest solely on alleged activities

872

of defendant's employees in commerce. The second group of customers use printed material printed by defendant's workers in the production of goods for interstate commerce. For instance, the eight sugar centrales, all producing sugar for export, use the following material printed by defendant's workers: binder for record sheets of final molasses; summary of grinding sheets; factory binder sheets; mill report binder; daily report of movement of sugars and molasses; sheets showing material despatched by warehouse; report of cane received; report of cane ground; pay envelopes; analysis of cane ground; tags attached to sugar bags, for identification; liquidation of canes forms; sheets "cane delivered by ———"; pads for warehouse; payroll books; receipts for molasses; pension and retirement plan; analysis of first juice extraction.

Turning to the other manufacturers, we find that one establishment uses tags printed by defendant's employees in the fermentation of tobacco; another uses cards for administrative purposes; another, producing cement, uses printed material for accounting purposes; others for record purposes.

The processing of sugar cane into sugar and molasses, as presently carried out in Puerto Rico, is a complicated mechanical and chemical process which by its very nature requires the use of forms and the keeping of records. Without the forms and records, it is doubtful whether the large centrales could maintain the flow of sugar and molasses into the stream of commerce. The men who printed these "settlement of canes", "analyses of cane ground", "analysis of first juice extraction", and the other items listed above, were engaged in an operation necessary to the production of the sugar and molasses.

The work of defendant's employees printing for the sugar mills, has "such a close and immediate tie with the process of production for commerce, and was therefore so much an essential part of it, that the employees are to be regarded as engaged in an occupation 'necessary to the production of goods for commerce.'" Roland Electric Co. v. Walling, 326 U.S. 657, 665, 66 S.Ct. 413, 416, 90 L.Ed. 383. The only difference between the printing done for the centrales and the printing for the other manufacturers is one of degree. The office work of a manufacturer is a practical necessity in the operation of his plant. A reading of the uses to which defendants' printed matter was put by the producers of goods other than sugar shows how necessary were the items printed by defendant's employees. For production and shipping purposes; accounting and time keeping purposes; pay rolls; booklets, crochet beadlers pay rolls; glovers records; tags attached prior to fermentation of tobacco.

Defendant has raised the defense that it is a retail establishment. Section 13(a)(2) of the Act reads as follows:

"* * * or (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *".

Plaintiff conceded at the trial that all of defendant's employees exclusively engaged in defendant's retail stationery store are exempt from the Act under Sec. 13(a)(2). This leaves for consideration by the Court only the status of employees in the printing shop.

The rule in connection with interpretation of the exempt provisions of the Act has been laid down in many cases. In A. H. Phillips, Inc., v. Walling, 324 U.S. 490, at page 493, 65 S.Ct. 807, at page 808, 89 L.Ed. 1095, 157 A.L.R. 876, the court said, speaking of the purposes of the Fair Labor Standards Act, "any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." In Bowie v. Gonzalez, 117 F.2d 11, 16, the Circuit Court of Appeals for the First Circuit, stated as follows:

"The scheme of the statute is broad and comprehensive with the obvious purpose of including all employees in interstate

commerce except those specifically excepted. In the instant case, the appellants claim specific exemption from the wage provisions of the Act. Being a remedial statute, the appellants must bring themselves within both the letter and spirit of the exceptions since they are subject to a strict construction." See also Schmidtke v. Conesa, 1 Cir., 141 F.2d 634.

█ The Administrator is not directed by the Act to define "retail establishment". However, his interpretation of the Act is entitled to great weight. United States v. American Trucking Association, 310 U.S. 534, at page 549, 60 S.Ct. 1059, at page 1067, 84 L.Ed. 1345. In Interpretative Bulletin No. 6, the Administrator, speaking of stationers in paragraph 76, states as follows:

"Stationers often operate printing plants which perform a variety of functions such as printing, engraving, bookbinding, die stamping, ruling, and lithographing. Such printing plants obviously cannot be considered retail establishments for purposes of the exemption, although the selling or distribution portion of the business might be exempt as a retail establishment, if segregated. Hence, employees working in such printing plants are not exempt."

This is a reasonable interpretation and is applicable to the present situation.

█ Defendant calls attention to the Administrator's ruling that an establishment which makes more than 25% of its sales (dollar value) at wholesale ceases to be a retail establishment. This ruling has been accepted by the courts as fair and reasonable. Northwestern Hanna Fuel Co. v. McComb, 8 Cir., 166 F.2d 932. Defendant emphasizes the fact that the sales involved in this case amount to only 3% in money value of the yearly sales. But this 25% figure, by the very terms of the Bulletin refer to total gross sales—intra and inter state and the defendant has failed to show by a preponderance of the testimony, that not more than 25% of its sales were to wholesalers. As said above, defendant has the burden of proving that he is within the exemption.

█ It follows that defendant's employees, other than those working in the retail stationery store, are covered by the Act.

Judgment will be for the plaintiff and it is so ordered.