**McCOMB v. DESSAU et al.**

**No. 9173–Y.**

United States District Court
S. D. California, Central Division.
March 10, 1950.

William S. Tyson, Solicitor, John J. Babe, Assistant Solicitor, Washington, D. C., Kenneth C. Robertson, Regional Attorney, James F. Scott, Senior Attorney, George E. Duemler, Attorney, United States Department of Labor, San Francisco, Cal., for the plaintiff.

Herman Lewis Bennett, Beverly Hills, Cal., for the defendants.

YANKWICH, District Judge.

The second amended complaint seeks to enjoin the defendants from violating the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. More particularly, it is sought to enjoin them from violating Sections 15(a) (2) and 15(a) (5) of the Act, 29 U.S.C.A. § 215(a) (2) and 215(a) (5), which relate to the payment of the minimum wages provided in the Act and the keeping of records required by the Act.

There is no denial that the wage scale of the defendants does not conform to the Act,—especially as it relates to the payment of overtime. None of the records required to be kept by the Administrator have been kept by the defendants.

The basis for the defendants' resistance is the contention that they are not subject to the Act.

We are of the view that they are.

## I. The Employees Are "In Commerce"

■ The defendants operate a publishing establishment at Hermosa Beach, Los Angeles County, California, from which they publish four beach town weekly newspapers,—the Hermosa Beach Review, the Redondo Beach Review, the Manhattan Beach Review, and the Palos Verdes Citizen. The material in these newspapers, published for contiguous cities, is, with the possible exception of an occasional legal advertisement, identical. The masthead is changed for each city, and the particular newspaper circulates among different groups of subscribers. In the preparation of the reading and advertising material, mats for articles and comic mats and national advertisements originating in interstate commerce are used. Colored cartoon supplements are used, supplied by a California concern which uses for production mats originating in interstate commerce, and *which is, itself, under the Act*. Some copies have, in the past, been sent to subscribers outside the State of California. The plaintiff insists that this fact brings the case within the clause, "production of goods for commerce". 29 U.S.C.A. § 207 (a). I cannot agree.

■ It is true that a small number of subscribers, such as forty-five out of a

circulation of nine or ten thousand has been held sufficient to determine the character of a daily newspaper. Mabee v. White Plains Publishing Co., 1946, 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607; and compare, Grant v. Bergdorf & Goodman Co., 2 Cir., 1949, 172 F.2d 109, 111. However, I do not believe that this criterion can be applied to a purely local, weekly publication which would have no appeal except to former residents or prospective or actual advertisers. At any rate, there is evidence in the record that the entire subscription list has been discontinued. And the fact that an occasional copy may have slipped through the postoffice, through the carelessness of a mailing clerk, should be disregarded in determining the issue. The out-of-state origin of a portion of the material not only in the form of prepared articles, cartoons, mats,—"boiler plate", so called,—estimated by the defendants at five per cent, but, in reality, greater, and the use of the cartoons and other features prepared out of the state warrant the conclusion that the employees of the defendants are "engaged in commerce". *29 U.S.C.A. § 207(a).*

The test applied in determining this fact was stated by the Supreme Court in McLeod v. Threlkeld, 1943, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L.Ed. 1538, to be "not whether the employee's activities affect or indirectly relate to interstate commerce but *whether they are actually in or so closely related to the movement of the commerce as to be a part of it.* * * * It is not important whether the employer, in this case the contractor, is engaged in interstate commerce. It is the *work of the employee which is decisive.*" (Emphasis added.) And see, Donovan v. Shell Oil Co., 4 Cir., 1948, 168 F.2d 229, 231.

So that, conceding that, because of the purely local circulation, the employees may not be engaged in "the production of goods for commerce", their activities in the production of the newspapers and incorporating into such production news and materials gathered and originating outside the state, place them in the category of employees "engaged in commerce."

## II. The Exemption of Local, Weekly Newspapers

The conclusion just stated is not determinative of the case, if, as the defendants contend, they are exempt by the provisions of Section 13(a) (8) of the Act. That exemption as it stood at the time when this action was instituted, exempted from the provisions of the Act an employee employed on the publication of a weekly or semi-weekly newspaper of less than 3000 in circulation, "the major part of which circulation is within the county where printed and published". 29 U.S.C.A. § 213(a) (8). The section has now been amended to increase the maximum circulation to 4000. While the Supreme Court has sustained the exemption as a proper classification, Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 193–194, 66 S.Ct. 494, 90 L.Ed. 614, 166 A.L.R. 531, such exemptions are construed *narrowly.* A. H. Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876; Roland Electrical Co. v. Walling, 1945, 326 U.S. 657, 666–667, 66 S.Ct. 413, 90 L.Ed. 383.

The printing establishment of the defendants is conducted on a unitary basis. At their plant at Hermosa Beach, California, their newspapers are printed and published. The employees are employed, *not by each newspaper, but by the publishing house.* They are paid by the defendants regardless of the newspaper on which they work. In truth, *all employees work on all the newspapers.* The newspapers are published on different days and when the work on one is completed, the work on another is begun. No books of account are kept segregating the work or earnings of the persons employed in the production of these newspapers or apportioning their time or wages to a particular newspaper. So that each employee is employed on the production of all four newspapers. Assume, therefore, that if we were dealing with the different employees of each of these newspapers, we would be compelled to

reach the conclusion that they are within the exempt class. Nonetheless, the fact remains that we are dealing with the employees of the defendants and *not with the employees of each of the four individual newspapers which the defendants produce.* In sum, we have before us *their* employees and *not* the employees of the individual newspapers. The individual newspapers have *no* separate or distinct corporate or business entity. Each is merely one of the ramifications of the publishing business which the defendants conduct. The defendants having chosen to conduct their business in this manner, and to publish several newspapers as a unitary project,— with one management, under one business and editorial direction, and in one plant,— they cannot *now* segmentize it in order to claim the benefit of the exemption, which applies to small, individual newspapers having distinct being. As said in Bennett v. V. P. Loftis Co., 4 Cir., 1948, 167 F.2d 286, 288: "If the declared purpose of the Act is to be accomplished, a project should be considered as a whole, in a realistic way; not broken down into its various phases so as to defeat the purpose of the Act." As all the employees participate in the production of all the newspapers, they should not be deprived of the benefits of the Act by an artificial separation and apportionment of their work to the four separate newspapers, which does not correspond to the actual conditions under which they are employed. Such a segregation would be the more unjust in a case of this character, because the newspapers are not only the product of a single enterprise, but they are, in truth, the same newspaper. They contain, except for an occasional change, the same reading and advertising material, and only the change of masthead and the different areas of circulation make for distinctiveness. Such complete, unified operation calls for a like unity test in determining employee status. And the application of such test commands denial of the exemption claimed by the defendants.

Judgment will, therefore, be for the plaintiff.