**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

LINDA HARLAS,

     Plaintiff - Appellant,

v.

THE BARN, LLC, a Colorado limited
liability company; M AND R
ENTERPRISES, LLC, a Colorado limited
liability company; CATHERINE HAIGH,
an individual,

     Defendants - Appellees.

No. 20-1181
(D.C. No. 1:18-CV-02320-RM-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BRISCOE**, and **CARSON**, Circuit Judges.
_____

Linda Harlas appeals the district court's order granting summary judgment for

The Barn, LLC ("The Barn"), M and R Enterprises, LLC ("M and R"), and Catherine

Haigh ("Haigh") on her claim for unpaid wages under the Fair Labor Standards Act

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

("FLSA"), 29 U.S.C. § 206.[1]  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

The parties are familiar with the facts found by the district court and we repeat them only briefly.  The Barn "is a commercial landlord and property management service that leases space to retail tenants in an old lumber barn located in Castle Rock, Colorado."  Aplee. Suppl. App., Vol. 3 at 592.  "The physical property is separately owned by . . . M and R" and "commonly referred to as The Barn Antique and Specialty Shops."  *Id.* at 592-93 (quotations omitted).  Ms. Haigh is the sole member of the LLCs, The Barn and M and R.  "The Barn leases [the retail space] from . . . M and R and provides landlord services to tenants/merchants who lease space . . . and sell their merchandise, but [The Barn] does not sell its own merchandise."  *Id.* at 593.

"Tenant/merchants, colloquially referred to as Barnies, lease space . . . on a month-by-month basis," and The Barn in turn "uses the Barnies' rent payments as its own lease payment to . . . M and R."  *Id.* (quotations omitted).  "Either party could unilaterally decide to discontinue the lease arrangement—the Barny could simply not pay rent," or The Barn "could notify the Barny that the Barny's lease will expire within thirty days."  *Id.*

---

[1] The district court declined to exercise supplemental jurisdiction over Ms. Harlas's state court claims and dismissed them without prejudice.  Harlas does not assign any error to the court's decision.

Ms. Harlas "began her tenancy . . . in 2010. Until her eviction in May 2018, [Ms. Harlas] and her business Sunday Afternoon Antiques . . . leased space . . . under a month-by-month lease agreement." *Id.* (citation and quotations omitted). Under the lease, she "also agreed to operate the cash register [at The Barn] four days per month, which increased periodically throughout the years to eight days per month in February 2017 when [she] leased additional space." *Id.* at 594. Ms. Harlas "worked the cash register about 126.5 days between September 2015 and May 2018." *Id.* (quotations omitted). As in previous years, and like the other Barnies, she was not paid for working the cash register.

"In June 2018, [The Barn] informed [Ms. Harlas] she would not be allowed to work her designated workdays [at the cash register] in June 2018 and that [it] was terminating her tenancy as of June 30, 2018 due to alleged misconduct involving other Barnies." *Id.* at 595. She requested her "unpaid wages and commissions [for working the cash register]." *Id.* The Barn refused to pay, and Ms. Harlas sued under the FLSA.

Ms. Harlas moved for partial summary judgment, which the district court denied. The court then notified her that she needed to present evidence that the FLSA covered her cash-register work. When she failed to present any such evidence, the court granted summary judgment under Rule 56(f)(3) of the Federal Rules of Civil Procedure for The Barn, M and R, and Ms. Haigh. Ms. Harlas appeals.

3

## II. DISCUSSION

### A. *Standard of Review*

Federal Rule of Civil Procedure 56(f)(3) permits a district court, after giving notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." *See also A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016) ("The court may grant summary judgment sua sponte so long as the losing party was on notice that it had to come forward with all of its evidence." (brackets and quotations omitted)).

"We review the district court's summary judgment decision *de novo*, applying the same standard as the district court." *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1191 (10th Cir. 2015) (quotations omitted). Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmovant, reveals "that there is no genuine dispute as to any material fact and the [other party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. *Legal Background*

An employee who seeks to invoke the FLSA must satisfy the requirements for either enterprise or individual coverage.[2] *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985) ("Employment may be covered under the [FLSA] pursuant to either 'individual' or 'enterprise' coverage."); *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298-99 (11th Cir. 2011) (same); *Reagor v.*

---

[2] We assume without deciding that Ms. Harlas was an employee of The Barn.

4

*Okmulgee Cnty. Fam. Res. Ctr., Inc.*, 501 F. App'x 805, 808 (10th Cir. 2012) (same) (cited for its persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A)).

"For enterprise coverage, there must be an '[e]nterprise engaged in commerce or in the production of goods for commerce.'" *Reagor*, 501 F. App'x at 809 (quoting 29 U.S.C. § 203(s)(1)). "[E]ngaged in commerce" means the enterprise has (1) two or more employees who are directly engaged in commerce or handling goods or materials that have been moved in commerce *and* (2) an annual gross volume of sales over $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(i), (ii).

"For individual coverage, an employee must directly participate in the actual movement of persons or things in interstate commerce." *Reagor*, 501 F. App'x at 809 (brackets and quotations omitted). "To be engaged in commerce . . . an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto as to be for all practical purposes an essential part thereof." *Id.* (brackets and quotations omitted). Under this theory, the employer need not engage in interstate commerce. Rather, "[i]t is the work of the employee which is decisive." *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943); *see also Reagor*, 501 F. App'x at 809 ("To determine whether an employee is engaged in commerce we look at her activities, not the business of her employer.")

C. *Analysis*

1. **Enterprise Coverage**

Ms. Harlas does not address the district court's rationale for its finding that she failed to establish enterprise coverage—the lack of *any* evidence that The Barn's gross rents as a commercial landlord exceeded $500,000 annually. Instead, for the first time on appeal, she advances a new theory for enterprise coverage—that "The Barn . . . is better conceptualized as a leased department than as a commercial landlord." Aplt. Opening Br. at 9.

It is unclear how this new theory would afford coverage under the FLSA. In any event, Ms. Harlas forfeited the argument by failing to raise it in the district court and has waived the argument on appeal by failing to argue that the court's failure to consider the new theory was plain error. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-30 (10th Cir. 2011).

2. **Individual Coverage**

Ms. Harlas's argument for individual coverage misses the mark. Instead of focusing on whether she regularly used instruments of interstate commerce as part of her duties while working at the cash register, she relies on the instruments of interstate commerce that she allegedly used in her own business—Sunday Afternoon Antiques. The relevant focus must be on Ms. Harlas's work at the cash register—not her work for Sunday Afternoon Antiques or the nature of The Barn's business—to determine whether she was engaged in interstate commerce. *See McLeod*, 319 U.S. at 497; *Reagor*, 501 F. App'x at 809.

6

We therefore agree with the district court that Ms. Harlas has not shown she was engaged in interstate commerce when she staffed The Barn's cash register to ring up sales of merchandise. "In assessing individual . . . coverage, Congress intends to regulate only activities constituting interstate commerce, not activities merely affecting commerce." *Reagor*, 501 F. App'x at 809 (quotations omitted). "[E]mployees who handle goods after acquisition by a merchant for general local disposition are not [engaged in commerce]." *McLeod*, 319 U.S. at 494.

## III. **CONCLUSION**

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge